MACON AND WESTERN RAILROAD COMPANY, plaintiff in er- ror, vs. JAMES M. DAVIS, defendant in error.

[1.] If there be a joint administration, and only one administrator sue, the non- joinder of the other can only be taken advantage of by plea in abatement, and that being a dilatory plea, the truth of it must be sworn to. If the ad- ministrator, not joined, be a *femme*, and she marry during the pendency of the action, it is not necessary to amend the declaration at the trial, by adding her ·as a party, or to prove that, on her marriage, her letters of administration ·were revoked, and to pass an order for the suit to proceed in the name of ·the administrator who alone sued; but if this be done, it does not vitiate the proceedings.

[2.] Declarations of a person who is not a party, nor the agent of a party to a transaction, and who is a competent witness, not made *at the time* of the act of which it is insisted it is explanatory, are not admissible in evidence as part of the *res gestæ.*

[3.] In suits against a Railroad Company, if it appear that there was mutual faults, the party guilty of the greater wrong or negligence, must be regarded as an original aggressor.

[4.] Whether the verdict of the jury was contrary to evidence, without evi-- dence and against the weight of evidence, considered and determined.

Case, in Bibb Superior Court. Tried before Judge LAMAR, at November Term, .858.

This was an action by James M. Davis, as administrator of Willis Boon, deceased, against the Macon and Western

Railroad Company, to recover the value of a negro man slave and a carriage. The slave killed, and the carriage destroyed by the cars, running on defendant's railroad.

All the facts necessary to a full understanding of the points adjudicated, are stated in the opinion of the Court.

*By the Court.*—McDONALD, J. delivering the opinion.

James M. Davis, as administrator on the estate of Willis Boon, deceased, instituted an action in the Superior Court of Bibb county, against the plaintiff in error, for the recovery of damages, for the destruction of a rockaway carriage, and killing a negro man slave, the property of his intestate, by the conducting and running the engine and cars of said plaintiff in error, forcibly and illegally against and upon and over the said carriage and slave.

On the trial of the cause, the jury rendered a verdict in favor of the defendant in error, whereupon the plaintiff in error, who was defendant in the Court below, moved for a new trial on several grounds, to-wit:

1st. Because the verdict of the jury is contrary to evidence, and without evidence to sustain it.

2d. Because the verdict of the jury is decidedly and strongly against the weight of the evidence.

3d. Because the verdict of the jury is against the law in said case and against the justice of the case.

4th. Because the Court erred in admitting in evidence, the letters of administration of the plaintiff, and also in admitting in evidence the order or judgment of the Court of Ordinary of Crawford county, and also in allowing the plaintiff to amend his declaration, by inserting the name of Henrietta A. Boon as co-plaintiff, and the passing an order that the case proceed in the name of James M. Davis alone.

5th. Because the Court erred in ruling out any of the evi-

dence of Dr. D. B. Searcy, all being ruled out except the seventh interrogatory.

6th. Because the Court erred in allowing the plaintiff to introduce in evidence and prove the injury done to other persons than the negro June, and because the Court erred in, not ruling out all the answers in the interrogatories of Mrs. Winn and Mr. Snow, and other witnesses, proving the injury to Mrs. Winn and her children.

7th. Because the Court erred in its charge to the jury.

The presiding Judge in the Court below, on hearing argument on this motion, refused the new trial, and counsel for the defendant excepted to his judgment thereon, and assigns for error:

1st. That the Court admitted in evidence on the trial, the letters of administration of James M. Davis and Henrietta A. Boon, upon the estate of Willis Boon, deceased, together with the order or judgment of the Ordinary of Crawford county, discharging Henrietta A. Boon from the administration.

2d. In admitting evidence upon motion of the plaintiff, on the trial, of injuries done to other persons, than the slave June, to-wit: injuries done to Mrs. Winn and her children.

3d. In ruling out the testimony of Dr. Daniel Searcy, proving the statements and sayings of Mrs. Winn, taken by commission.

4th. In overruling the motion of counsel for the defendant for a new trial on each and all the grounds taken in their motion for a new trial.

This Court, at the last June Term, at this place, decided the point made in the second assignment of error, and held the identical evidence admissible in the case of *Malinda Winn vs. The Macon and Western Railroad Company*. We consider the decision in that case, as decisive of this point, and without further remark, I will pass on.

[1.] The first assignment of error, is predicated on the

judgment of the Court below, overruling objections made, to the admission in evidence of the letters of administration granted to the plaintiff and Henrietta A. Boon, on the estate of Willis A. Boon, deceased, and the order of the Court of Ordinary of Crawford county. The action was instituted originally by Davis, as administrator of Willis Boon, for the recovery of damages for the destruction of property belonging to his intestate. On the trial of the cause, he tendered in evidence the said letters of administration, and an order passed by the Ordinary of Crawford county, reciting that Henrietta A. Boon had intermarried with Adolphus A. Purifoy, who had failed to apply for letters and revoking her letters, and discharging her from liability as administratrix. When this evidence was demurred to, the plaintiff's counsel moved that his declaration be amended by inserting the name of Henrietta A. Boon as administratrix, jointly with the said James M. Davis, as original plaintiff, so as to perfect the record. To this amendment the counsel for the defendant objected, which objection was overruled by the Court and the defendant excepted. The plaintiff's counsel then moved that the cause proceed in the name of James M. Davis alone, as administrator, to which the defendants' counsel objected. The Court overruled the objection and the defendants excepted.

The whole of this proceeding, amending the declaration, by adding Henrietta A. Boon as a party plaintiff; the order of the Ordinary of Crawford county revoking her letters of administration, and the order of the Court below, directing the cause to proceed in the name of James M. Davis alone, as administrator, was useless. If it affected the case in the slightest degree, we might, perhaps, consider, whether it was strictly regular and legal, to have *added* a party plaintiff to the case by way of amendment. We do not say that it would not be allowable under our very liberal statute of amendments, when it would prevent an injustice, or save costs. We are inclined to think that the Ordinary of Crawford

Macon and Western Railroad Co. vs. Davis.

county made a very liberal use of his power, and perhaps exceeded his authority, when he revoked the letters of administration of Henrietta Boon, and discharged her from liability as administratrix, on account of her marriage. Her letters abated by reason of her marriage, *during coverture.* They abated by act of the law and not by the act of the Ordinary, and no action by him was necessary to give effect to the abatement. I apprehend, that by the death of her husband, during her life time, her letters of administration would be revived. If the suit had been originally instituted in the joint names of herself and Davis, as administrators, nothing more was necessary, to enable Davis, as administrator, to prosecute the suit in his own name as administrator, than to have suggested of record her marriage, and the consequent abatement of her letters of administration. But why all this proceeding? The suit was brought by Davis alone as administrator. That such was the fact, was no sufficient ground of demurrer to the joint letters of administration as evidence. They showed that Davis was administrator. "If one of several executors or administrators bring an action of debt or assumpsit, or in tort, it is settled that the defendant can only take advantage of the non-joinder of the co-executor or co-administrator, by pleading in abatement, after *oyer* of the probate or letters of administration, that the other executor or administrator therein mentioned, is alive, and not joined in the action." 1 *Chit. on Pl.* 22. The defendant pleaded the *non-joinder* of Henrietta Boon, and, in form, the plea is a plea in bar, and on that account ought not to be considered a good plea in abatement. But it is a dilatory plea, and if sustained, and the cause were dismissed, it could be renewed in the name of both administors. The truth of the plea is not sworn to, and the Judiciary Act declares that "no dilatory answer shall be received or admitted, unless affidavit be made of the truth thereof." *Cobb* 486. The cause ought, therefore, to have proceeded to trial in the name of Davis as administrator, in whose name

it was instituted, even if the other proceedings were irregular, which we by no means, hold.

[2.] The conversation in regard to the cause of the injury which took place between Dr. Searcy and Mrs. Winn, or in the hearing of Dr. Searcy, was properly rejected.   It was not a part of the *res gestæ*.   It was a considerable time after the act which caused the damage, and she was a competent witness.   In my opinion, it is extending the principle a great way to allow the declarations of a person to be given in evidence as a part of the *res gestæ*, made at any point of time, who is not a party nor the agent of a party, and who is living, and whose evidence may be procured by reasonable diligence.

[3.] The next assignment of error is on the refusal of the Court to grant a new trial on each and all the grounds taken in the motion.   Among the grounds taken, is one that the Court erred in its charge to the jury.   There is no error assigned on this charge, plainly and distinctly set forth, as required by the statute.   *Acts* '55 and '56, 201.   Indeed, no special objection was urged in the argument before us, and in looking through the charge, a majority of the Court think that the law was fairly submitted to the jury.   Before the jury could have found a verdict for the plaintiff under the charge, they must have found that if the plaintiff or his servant was not free from fault, yet the defendant by the exercise of reasonable care and diligence, could have prevented the injury or collision, and neglected to do so ; or they must have found that if the employees of the railroad saw the carriage of the plaintiff approaching dangerously near, they could have stopped the train, and neglected to do so, so as to prevent the collision, and that the plaintiff at the time used ordinary diligence and precaution to escape the difficulty.   One member of the Court is of opinion that the presiding Judge ought to have instructed the jury that, in the event they should find that both parties were in fault, but that of the defend-

ant was greatest, the quantum of fault of the plaintiff must be weighed, and the damages should be abated accordingly.

We know of no rule for graduating the damages in that way. A plaintiff might be so much in fault as to disentitle him to damages, although the defendant may have been also to blame. It is the duty of railroad companies so to regulate the movements of their trains, near crossings of highways, as to place them under the control of those having the management of the engines, that they may be at once checked or stopped, if there should be danger of injury to persons in passing. Not to do so is a fault. But if they should fail in this duty, and not reduce the speed, and a person near the crossing should wilfully rush in front of the car, to be run over or have his property destroyed, neither he, nor his personal representatives, if he be killed, could have a remedy. The damage in such case would be the consequence of the injured party's misconduct. It might so happen, in a case of mutual negligence, that the jury could not determine the preponderance of the blame, and some authorities say that in such case, there being no mode of apportioning damages, at law, there can be no recovery. 6 *Whar.* 311. But if the parties are not equally in the wrong, how can the damages be apportioned? It would be difficult to set off negligence against negligence and apportion the damage. He who is guilty of the greater negligence or wrong, must be considered the original aggressor and accountable accordingly. In this case, we think that the presiding Judge in his charge to the jury, conformed to the rulings of this Court, in cases arising from this identical collision. We think these rulings are right, and come as near meeting the justice of each case, that may arise, as any that could be laid down.

Another ground in the motion for a new trial is, that the jury found contrary to law. We know of no principle of law violated by their verdict rendered in this case.

[4.] Was the verdict of the jury contrary to evidence and

without evidence, or strongly and decidedly against the weight of evidence? For the purpose of deciding this point it is necessary to refer to the material parts of the testimony delivered to the jury by the witnesses of the respective parties, which relate to the question of negligence. There is no controversy as to the facts of killing the slave and destroying the rockaway, nor is any question raised as to the amount of damages found by the jury. At the time the engine run against the rockaway, on the driver's seat of which the negro was sitting, it was standing on the railroad tract, on the crossing of the public road. According to the evidence of Mrs. Winn, who was in the carriage, when the engine was first discovered by her, it was about two hundred yards above the crossing, and the carriage was about twenty feet from the same point, with the railroad on one side and the fence on the other, and too near to each other to admit of the turning of the carriage. The driver hurried the mules and did every thing in his power to effect a crossing, by whipping and encouraging them, but as soon as they got on the crossing they refused to move, and turned their heads and looked at the engine. She called on the driver to stop, when within twenty feet of the crossing, but he urged the mules on and said it would not do to stop where they were; that there was no way to get out of harm but by crossing, that the mules were not accustomed to the cars. Mr. Robertson, the conductor, did not see the rockaway before the collision, but gives it as his opinion, from facts and circumstances, that the driver, by exercising proper caution and due diligence, could have avoided the difficulty.

William Dougherty, a witness for the defendant, testified that the mules, from fright or some other cause, when the carriage got on the track of the railroad, stopped and refused to move, but stood looking round at the approaching engine until it struck the carriage. The boy urged and whipped the mules to make them move from the track, but to no purpose; they refused to go. The boy and the carriage had

plenty of time to have crossed over and cleared the track, after getting on, if the mules had not stopped and refused to move out of the way. They were about seven hundred and ninety-two feet from the crossing, when they first saw the negro about twenty feet from the railroad.

The foregoing is the testimony of the plaintiff, and that part of the defendant's evidence which supports it, which applies to the caution and diligence of the driver to avoid the injury which resulted in his death and the destruction of the rockaway.

In opposition to it, Snow the engineer, testified, that when he came in sight of and could see the road crossing, he saw the carriage, and negro on the driver's seat, standing still about twenty or thirty feet from the railroad, and he supposed they would remain there until the engine and train passed by; hence he made no attempt to stop or check the speed of the engine; but when the engine arrived nearly opposite the carriage, and when it was too late for him to stop the engine, the mules and carriage started to cross the railroad track, and the mules from some cause unknown to him, halted before the carriage crossed the track. He made every effort in his power to stop the engine, but it was then too late to do so in time to prevent the accident. In another part of his testimony, he attributes the accident and injury wholly to the carelessness and imprudence of the negro who drove the carriage, and says the road crossing was at an open place, and the driver could have seen the engine when at least an hundred yards from him, and, if not deaf, must have heard it before he saw it. He and the carriage were at least one hundred yards from him, when he saw them standing still about twenty or thirty feet from the railroad, but contrary to all usage and to his great surprise, when the engine arrived nearly opposite the carriage, he started across the railroad in front of the engine, and the mules from fright or some cause unknown to him, halted before the carriage crossed the track. He does not know whether the negro was drunk or not, but

a broken bottle was found in his pocket, and the cork and his clothes were wet with spirits. The two witnesses, Dougherty and Snow, testify to the declarations of Mrs. Winn at the time, to the effect that she blamed the driver entirely for the injury, and that if he had obeyed her, it would have been avoided. Mrs. Winn testifies, that she thought for a long time the negro was wrong. Col. Whittle was examined. Since the last trial, he visited this crossing, and from the fence and obstructions, a two horse carriage could not have been turned there, within twenty feet of the track, without great danger of upsetting. This is the entire evidence on the issue of the plaintiff's caution and negligence, and if to find a verdict for the plaintiff, the jury must have found this issue in his favor, we see no sufficient reason for disturbing the finding. The jury may have believed that the judgment of the driver was right; that the greater safety of the persons in the carriage, himself, the mules and the carriage, required him to cross the road; they may have believed with Mrs. Winn and Mr. Dougherty, that he had ample time to cross, and but for the perverseness and obstinacy of the mules, he would have passed without injury; they may have believed that he could not foreknow that the mules would obstinately refuse to go forward, when they had got the carriage on the centre of the track of the railroad. The jury may have believed that the witness Snow was mistaken in the principal part of his testimony on this point; they may have believed it to have been impossible for the driver to have forced the mules on the railroad track, in front of an engine, driven at great speed, and when the engine was nearly opposite the driver and carriage; and they may have believed that it was especially impossible for him, by any kind of effort, under the facts testified to by this witness, to have forced the mules on the track in time for them to have halted and looked round before the collision.

The only remaining point for consideration is, whether the jury were warranted in finding negligence on the part of the

defendant or its employees. It was in evidence that at the place of this catastrophe, there was an up-grade in the road track in the direction the train was going, of thirty-seven feet to the mile. It was in proof also, that the train might have been stopped in going the distance of one hundred and fifty yards. Robertson the conductor testified, that it is the duty of the engineer to look out ahead for dangers and obstructions on the road, and to give notice to the brakeman. Mrs. Winn testifies, that she was looking at the engineer all the time. He did not try to stop the train, but struck the carriage at full speed. She says the whistle was not blown at all, and that the engineer was looking out all the way from the time the train came in sight, until the collision took place. William Robertson, the conductor, testified, that *at the time of the accident*, he was standing on the platform of the baggage car. When the alarm was given by the whistle, he jumped to the brake, with the brakeman, and did all they could to arrest the train. The blowing of the whistle was the first intimation he had, that there was a collision or danger of a collision. John Snow, the engineer, says that he made no attempt to stop or check the speed of the engine, and assigns as a reason, that when he came in sight of the crossing, he saw the carriage and driver standing still about twenty or thirty feet from the Railroad. There is a discrepancy between the evidence of Dougherty and Snow. They were together on the engine. Dougherty says they were seven hundred and ninety-two feet from the crossing, when they first saw the negro about twenty feet from the crossing. In another place, he says that as soon as Snow, the engineer, came in sight of the driver and carriage, he immediately reversed the engine and blew the whistle to put on the brakes, and did all he could to stop it, but it was too late. He cannot say that the negro stopped at all. Mr. Dougherty, in giving an account of this thing to Mr. Brewer shortly after its occurrence, stated, that Snow never blew the whistle until after the engine stuck the carriage. The weight of the evi-

dence, then, is decidedly against an effort to check the train, until after the collision or at the moment of collision. Taking Snow's testimony alone, and the inference is strongly against his conduct. He saw a driver and carriage within twenty feet of the Railroad crossing, and made no effort to check the rapid movement of the train. But the jury, it is presumed. gave greater credit to the testimony of other witnesses. Mr. Dougherty, who was with him, saw the driver from the moment he came around the curve in the road, and his account of his conduct is in harmony with that given by Mrs. Winn, to-wit: that the driver made no stop before he reached the track, that the mules then halted and could not be driven forward. Those witnesses who testified that the brake was not put on until the moment of the collision, are supported by the unquestionable fact that the crossing could be seen at the distance of from two hundred and fifty to two hundred and sixty yards, and the train was not stopped, which the testimony shows might have been stopped in going one hundred and fifty yards. From the railroad crossing the train ran about two hundred and seventy yards before it was taken up. Mr. Dougherty says he measured it, six hundred feet, sometime afterwards, but is not certain that he measured it to the point of stopping. There was no doubt a *bona fide* intention and effort to stop the train after the collision, and that it was not stopped within the distance that it ought to have been, must be accounted for by the confusion and excitement produced by the occasion. There was much conflict in the evidence in this case, and testimony tending to impeach witnesses on both sides. Of the credit of the witnesses the jury was to judge. The presiding Judge who heard all the evidence and was an eye witness to the manner and deportment of the witnesses who testified on the stand, refused the motion in this case. It seems to us, who can know the evidence only as it is presented on paper in the record, that there was no error in the conclu-

sion of the Court upon that point, and upon a full view of that and all other points in the record, affirm the judgment.

Judgment affirmed.

LUMPKIN, J. concurred.

BENNING, J. dissenting.

The verdict was for the full value of the property lost. The fault which caused the loss, was, I think, in both parties. When this is so, the loss, I think, ought to be borne by both parties, each party bearing a part proportioned to his part of the fault.

See my opinion in *Macon and Western Railroad vs. Winn*, decided at Macon in June, 1858.

Hence, I think, that the damages were too large.

Consequently, I must dissent from the judgment of the Court.