## CRUMMEY & HAMILTON *v.* BENTLEY· *et al.*

1. Plaintiffs in an action for land who show affirmatively that, under the title upon which they rely, they are in no event entitled to recover more than five sevenths of the premises in dispute can not lawfully have a verdict for any greater fractional part thereof.

2. A trial judge can not properly assume that a deed attacked for forgery is in fact a forged instrument, when the question of its genuineness depends upon what conclusion with respect thereto should be drawn from evidence entirely circumstantial, including the mere opinions of witnesses, and a comparison of the signature affixed to the paper with another writing shown to be in the handwriting of the alleged maker.   A direction of a verdict based upon such an assumption was necessarily erroneous.

3. In order for the heirs of an intestate to maintain an action for land belonging to his estate, they should allege and prove that there had been no administration thereon, or that, if there had been administration, the administrator was discharged before the action was brought, or else that the administrator, if in office when the suit was begun, consented to the bringing thereof.   There was in the present case no demurrer to the petition for failure to make the proper allegations with respect to the subject of administration, but the point as to proof in this regard was properly presented by a request to charge.

4. A deed executed outside of Georgia was not, on January 31, 1883, entitled to registration in this State by virtue of an acknowledgment made by the maker or makers thereof before the clerk of a court of the State in which it was signed.   Though such a deed was nevertheless actually placed on record in · the office of a clerk of the superior court of this State, a certified copy thereof from such record has, as such, no evidentiary value.

5. In order to render admissible in evidence a paper purporting to be such a copy, the party tendering the same must, as in the case of an unregistered deed, show the due execution of an original, its loss or destruction, and that the paper sought to be introduced is a substantially correct copy thereof.

6. It is proper to refuse a request to give a charge predicated upon an erroneous assumption of fact.   ·

7. The defendant in an action for land is not, under the "improvement act of

1897," entitled to any credit for the value of a church built upon the land by popular subscription, nor for expenses incurred in fertilizing the land.

Argued January 9,—Decided February 7, 1902.

Equitable petition. Before Judge Roberts. Wilcox superior court. June 14, 1901.

*J. H. Martin, C. Crummey, D. B. Nicholson, J. L. Bankston,* and *E. D. Graham,* for plaintiffs in error.

*J. W. Haygood, D. A. R. Crum,* and *Eldridge Cutts,* contra.

LUMPKIN, P. J. The defendants in error, William H. Bentley, Francis A. Bentley, Mary E. Denison, Roxey A. Lynd, Frank Higgins, Naomi Carter, and M. E. Sisney, brought in the superior court of Wilcox county an action against Crummey & Hamilton for the recovery of an undivided five-sixths of four lots of land, including lot number 13 in the 12th district of originally Dooly, but now Wilcox county. They also prayed for damages alleged to have been done by the defendants to the timber upon the lots in question. The first four plaintiffs named were brothers and sisters of M. A. Bentley, deceased, and the last three were the children of a deceased sister of M. A. Bentley. The jury were instructed by the court that the plaintiffs were entitled to recover five-sixths of the lots sued for, and a verdict to this effect, and also finding for the plaintiffs damages in an amount stated, was returned. The defendants moved for a new trial, and by their bill of exceptions allege error in overruling their motion. It contains a number of grounds in which exception is taken to certain charges given by the court. It is unnecessary to deal with these separately, because the case upon its merits really turns upon the decisive instruction indicated above. We shall, in the discussion which follows, deal with the main question involved in this instruction, and also with other points which, in view of the new trial to be had, may be material at the next hearing.

1. The plaintiffs showed that the lots in question had been granted by the State of Georgia to M. A. Bentley on May 20, 1846, and proved their relationship to him as pointed out above. It also appeared that at the time of his death he left another brother, that his mother, Mrs. Rachel H. Bentley, survived him, and that she died before the present action was begun. Whether or not M. A. Bentley's father also survived him does not appear. As will have

been seen, the court held, and so charged the jury, that the plaintiffs were entitled to five-sixths of the lots for which they sued. This could not be so; for at the time of his death his estate was divisible into seven general shares; his father, if living, being entitled to one, and, in the event he had died before M. A. Bentley, his mother being entitled to this share.    See Civil Code, § 3355, par. 6, which reads as follows: "The father, if living, inherits equally with brothers and sisters, and stands in the same degree.    If there be no father, and the mother is alive, she shall inherit in the same manner as the father would."    So in no event were the plaintiffs entitled to more than five-sevenths of the lots in controversy.    The verdict can not be upheld on the theory that the plaintiffs were entitled to recover as heirs of their mother, for their petition predicates their alleged right to recover the fractional interest which they claimed in the lots in question expressly and exclusively upon the theory that they are heirs at law of M. A. Bentley, and they did not undertake to base their right of action upon the proposition that they were also heirs of their deceased mother.

2. The defendants introduced in evidence a paper purporting to be a deed executed in Richmond county, Georgia, on May 28, 1846, from M. A. Bentley to Elbert Brisbane, conveying lot number 13 in the 12th district of Dooly county.    Upon this instrument the names of Riley Monger and David G. Salisbury, J. P., appeared as witnesses.    The plaintiffs attacked this instrument as a forgery, and introduced evidence strongly tending to show that such was the fact.    Certain witnesses testified that in their opinion the name M. A. Bentley, as written upon this paper, was not in his handwriting.    There was also in evidence a letter purporting to have been written by M. A. Bentley and shown to be in his handwriting, which the jury had the opportunity of comparing with the deed offered in evidence, in passing upon the question whether or not the signature of M. A. Bentley had been forged thereto.    The instructions constraining the jury to find for the plaintiffs as directed necessarily assumed that this deed was a forgery.    We do not think that it was the right of the judge to summarily decide this question, but he should have left the same to be determined by the jury.    Save only as to the alleged maker of and witnesses to an instrument, it is not within the power of any witness to swear absolutely and unqualifiedly that the same is a forgery.    There was

in the present case no direct and positive evidence of forgery. The witnesses who denounced the instrument in controversy as a forgery merely stated that, in their opinion, the signature of M. A. Bentley thereon was not genuine. This opinion could not be absolutely binding upon the jury, especially as there was before them a writing in the handwriting of M. A. Bentley, with which they could compare the signature upon the deed and form their own conclusion as to its genuineness. If the deed was not a forgery, then clearly the defendants showed title out of the plaintiffs as to lot number 13, and they were not entitled to recover any interest in the same.

3. One of the contentions properly made and insisted upon by the defendants in the court below was that the plaintiffs were not entitled to a recovery without showing either that there had been no administration in Georgia upon the estate of M. A. Bentley, or that, if there had been an administration, the same had been wound up and the administrator discharged before the date upon which the petition was filed, or else that, if upon that date there was an existing administration, the administrator had consented to the bringing of the present action. As the case is to be tried again for reasons given above, we do not deem it essential to discuss now the bearing of the evidence in the record upon the contention just mentioned. We will, however, for the guidance of court and counsel when the next trial is had, call attention to the settled rule, that in order for heirs to maintain an action for realty belonging to the estate of an intestate, they should "allege and prove that there was no administration on the estate, or that the administrator, if there was one, assented to their bringing suit." *Greenfield* v. *McIntyre,* 112 *Ga.* 691. Of course where there had been an administration and the administrator had been discharged, the case would stand as if there had been no administration at all. The deficiency of the petition now before us in not making proper allegations with respect to the subject of administration was not, as it might have been by an appropriate special demurrer, brought into question; but the point was, by a written request to charge, distinctly made that the plaintiffs were not entitled to recover without making the requisite proof in this regard.

4. The defendant sought to introduce in evidence a paper purporting to be a certified copy of a deed executed in Bledsoe county,

Tenn., on August 26, 1856, by certain of the heirs at law of M. A. Bentley to their mother, Mrs. Rachel H. Bentley, covering all the lots in controversy except number 13. It is now well-settled law that "A certified copy of a deed, taken from the proper records, is, when the loss or destruction of the original has been shown, admissible in evidence to prove the existence, genuineness, and contents of the original." *Holtzclaw* v. *Edmondson*, 114 *Ga.* 171. Obviously, however, unless the original has been by authority of law duly admitted to record, a registration thereof amounts to nothing, and an exemplification from the record has, in and of itself, no evidentiary value whatever. See *Hayden* v. *Mitchell*, 103 *Ga.* 437, and cases cited. The transcript of the record in the case now before us discloses that the paper offered in evidence purported to be a copy of a deed attested by two unofficial witnesses, the execution of which had, however, on the 17th day of November, 1858, been acknowledged by the makers thereof before one James S. Pankey as "clerk of the county court for the county Bledsoe," in the State of Tennessee. The motion for a new trial recites that the certified copy tendered in evidence showed that the deed and the acknowledgment of the execution thereof were recorded in the office of the clerk of the superior court of Wilcox county on the 31st day of January, 1883. But it is clear that an acknowledgment like that referred to was not, on the date last mentioned, legally sufficient to admit to record in this State a deed executed in another jurisdiction. As the law then stood, "to authorize the record of a deed to realty or personalty, it" had to "be attested, if executed out of this State, by a commissioner of deeds for the State of Georgia, or a consul or vice-consul of the United States (the certificates of these officers, under their seals, being evidence of the fact), or by a judge of a court of record in the State where executed, with a certificate by the clerk, under the seal of such court, of the genuineness of the signature of such judge." These provisions were embraced in the Code of 1882, § 2706, and not until the act of December 18, 1893, was a deed executed outside of this State entitled to record here by virtue of an acknowledgment of its genuineness before a "clerk of a court of record" of a sister State. See Acts of 1893, p. 37. It follows that the clerk of the superior court of Wilcox county had no authority to record the document above referred to, and his action in the premises should be treated as a mere nullity.

5. The next inquiry with respect to the paper sought to be introduced in behalf of the defendants is: Did the evidence relied on in connection therewith duly establish the execution of an original which had been lost or destroyed and of which this paper was a substantially correct copy? We have carefully read all of the testimony by which the defendants undertook to lay the foundation for the introduction of secondary evidence with reference to the execution of the alleged deed above mentioned, and have reached the conclusion that the trial judge was right in excluding the document tendered by the defendants as a copy of the same. The testimony most strongly tending to show that this copy was admissible as secondary evidence was that of S. C. Norwood, taken by interrogatories. He testified, in effect, that he had seen an original deed purporting to have been signed by the heirs of Mrs. Rachel H. Bentley, or some of them, conveying certain property to her; and he also testified that the signatures of the witnesses on such deed were apparently genuine. But he further testified that he was unable to state whether or not the copy deed (being the paper offered in evidence) embraced a description of the lots described in the original deed. In this connection he stated: "Whether this be a true and perfect copy of the original deed in all things, I can not and dare not say; for instance, the number of lots of land and counties in which located could not be verified or remembered by me." Another witness, W. S. Thompson, testified: "I can not state positively whether this certified copy covers the same lands that the deed I had (referring to the alleged original) covered or not, but my recollection is that the original covered all of these lands in suit except one lot; I don't recollect which lot it was." In view of this testimony, we can not hold that his honor below erred in ruling that the defendants had failed to prove with sufficient distinctness that the copy sought to be introduced was even a substantial copy of the alleged lost original.

6. The court was requested to charge: "If the evidence shows that M. A. Bentley left a will, and no will has been introduced, then there can be no recovery on the part of the plaintiffs, who claim as his heirs at law." This request was, on its face, predicated on the theory that no paper purporting to be the last will and testament of M. A. Bentley had been introduced in evidence. It appears, however, that such a paper was introduced in evidence; and there-

fore the request was based upon a false assumption of fact, and was properly refused. In one ground of the motion it is alleged that the court erred in permitting the introduction of this paper; but as it was not in this ground set forth, either literally or in substance, no question is thereby properly presented for determination by this court.

7. The defendants in their answer set up that they were, under what is known as the "improvement act of 1897," entitled to compensation for certain improvements which they alleged had been placed by them upon the premises in dispute. Among the items insisted upon was a church, which it appears had been built upon one of the lots by popular subscription. Another item consisted of a claim for improvement to the land by reason of fertilization. The court held that the defendants were not entitled to any allowance upon these claims; and we are of the opinion that, even giving to the act in question its widest possible scope and operation, the views entertained by the trial judge were undoubtedly sound.

*Judgment reversed. All the Justices concurring, except Fish, J., disqualified.*