## WILSON *et al. v.* WOOD.

1. Before heirs at law of an intestate can recover land which belonged to the estate of their ancestor, they must allege and prove that there was no administration on the estate, or, if there be an administrator, that he has assented to their bringing suit.

2. The lack of administration may be shown by the testimony of any person that he has examined the records in the ordinary's office of the county in which letters of administration should have been taken out, and that the records do not show that letters were granted.

(a) A witness will not be permitted to testify that no administration was ever had on a particular estate, until it is made to appear that such witness has examined the records.

(b) Want of administration on the estate of a decedent is not established by proof from a witness that he has examined, or is familiar with, the records in the ordinary's office of the county of the decedent's residence for a portion of the period between the decedent's death and the bringing of the suit by his heirs at law, and that nothing appeared on the records so examined to indicate that the estate had a legal representative.

Submitted July 18, 1906.—Decided January 16, 1907.

Complaint for land. Before Judge Russell. Jackson superior court. August 14, 1905.

*R. L. J. Smith, J. W. H. Underwood,* and *H. H. Dean,* for plaintiffs. *W. I. Pike* and *W. W. Stark,* for defendant.

EVANS, J. The suit was a complaint for land, and upon the conclusion of the plaintiffs' evidence the court entered a judgment of nonsuit. In their petition the plaintiffs alleged that they were the sole heirs at law of Posey Wilson and that there had been no administration nor necessity of administration on the estate of their ancestor. The evidence submitted to show that there was no administration on the estate was as follows: A witness testified, that he had been ordinary of the county for four and a half years preceding the trial, and there was not, so far as he knew, any administrator of the estate of Posey Wilson; that no administrator was making returns, and there had been no appointment made during the service of the witness as ordinary, or other proceedings connected with the estate, but the witness had never examined the records any further back than the beginning of his term. It appeared that the decedent died in 1867, and that letters of administration issued to his widow, who within a year or two thereafter married the second time, and who died about 1901. The suit was filed July 1, 1902. The plaintiffs offered to

show by another witness that there was no administration upon the decedent's estate; this testimony was objected to, and the court ruled it out on the ground that "proof by the records was the best evidence." It does not appear that this witness had ever examined the official records of the county in which the decedent resided at the time of his death. The plaintiffs contend that the judgment of nonsuit was erroneous, because there was sufficient evidence to show that there was no administration on the estate of their an-cestor at the time suit was instituted, and that the court erred in rejecting the testimony of the witness who was offered to show that this was true.

1. It is settled in this State that under the provisions of the code, before the heirs at law of an intestate can recover land which belonged to the estate of their ancestor, they must allege and prove there was no administration on the estate, or, if there be an ad-ministrator, that he has assented to their bringing suit. *Greenfield* v. *McIntyre,* 112 *Ga.* 691; *Crummey* v. *Bentley,* 114 *Ga.* 746; *Doris* v. *Story,* 122 *Ga.* 611; *Stanley* v. *Stanley,* 123 *Ga.* 124. In-deed, at the trial this principle of law was recognized by the plain-tiffs, and they undertook to show there was no administration on the estate at the time suit was brought. The inquiry is whether the evidence offered by them was sufficient to establish this fact, and, if not, whether the court erred in excluding the additional tes-timony offered in this connection.

2. In determining whether the evidence offered to support the contention that there was no administration on the estate of Posey Wilson at the time of bringing suit was sufficient, it is necessary to decide whether the letters of administration on his estate, granted to ·his widow, abated on her remarriage. By the act of 1828 (Cobb's Dig. 326) it was provided that letters testamentary, of administration, or of guardianship, granted to a widow or feme sole, abated upon her subsequent marriage. This act was codified in the original code, and its provisions were carried forward in the Codes of 1886, 1873, and 1882. Such was the law of this State, until the act of 1883 (Civil Code, § 3368), unless it was impliedly repealed by the "married woman's act" of 1866. This latter act is contained in the Civil Code, § 2474, and is as follows: "All the property of the wife at the time of her marriage, whether real, personal, or choses in action, shall be and remain the separate

property of the wife; and all property given to, inherited, or acquired by the wife during coverture, shall vest in and belong to the wife, and shall not be liable for the payment of any debt, default, or contract of the husband." Notwithstanding a feme covert may own and dispose of her own property as a feme sole, still the statute declares that the husband is the head of the family, and that the wife's legal civil existence is merged in the husband except so far as the law recognizes her separately, either for her own protection or for her benefit. Civil Code, § 2473. The "married woman's act" of 1866 conferred on a feme covert the same right to own property which a feme sole had, but her right of disposal of her own property was not unrestricted. A married woman can not pledge her separate estate to secure the payment of another's debt. Civil Code, § 2488. Now if the effect of the act of 1866 be so sweeping as to demolish all distinction between a feme covert and a feme sole as to their power to administer on the estate of a decedent, we will be confronted by this anomaly. The Civil Code, § 3401, declares that if two or more administrators unite in a common bond they "are mutual sureties for each other's conduct." If one of two administrators should be a married woman, then her separate estate would not be liable for a devastavit of her coadministrator, because she is not liable on any contract of suretyship. We might rest the necessity of the enabling act of 1883 upon this point. That act (Civil Code, § 3368) provides that letters of administration granted to a feme sole shall not abate in consequence of her marriage after the granting thereof. And furthermore, the power to be an administratrix, executrix, or guardian is not a matter merely in regard to her own property, but primarily affects the property of others. As the wife remained, to some extent at least, under the dominion of the husband after the act of 1866, it might be a strong reason why letters of administration granted to a widow or feme sole should not abate upon her marriage. Certainly the legislature took this view of the matter when the enabling act of 1883 was passed, or else this legislation was only supererogation. Therefore we conclude that under the law as it stood at the time of the marriage of the widow of the intestate, her letters abated by act of the law, and no action before the ordinary was necessary to give effect to that abatement. *Macon & Western R. Co.* v. *Davis*, 27 *Ga.* 113. Her second husband, upon her remarriage, could assume

the administration until the ordinary appointed another adminis-trator, and if her husband in fact did so, he was clothed with full authority to manage the affairs of the estate.    *Fields* v. *Carlton,* *75 Ga.* 560.    The effect of the remarriage of the widow of Posey Wilson was to leave the estate of her intestate unrepresented, un-less her second husband actually assumed charge of its affairs, or the ordinary appointed a successor.    We can not indulge the pre-sumption, however, that at this time the estate was fully adminis-tered, or that her husband did not exercise his legal right to take charge of the estate, or that a successor was never appointed to wind up its affairs.    The burden was on the plaintiffs to show that at the time suit was brought there was no administration on the estate, or else that they had obtained leave to sue from the admin-istrator, if there was one.

The lack of administration upon a particular estate may be shown by the testimony of the ordinary, or of some other person, that he has examined the records in the ordinary's office of the county in which letters of administration should have been taken out, and that the records do not show that letters were granted. *Greenfield* v. *McIntyre,* 112 *Ga.* 695; *Vizard* v. *Moody,* 117 *Ga.* 70. This method of proof does not come within the general rule that an official record or an authenticated copy thereof is the best evi-dence of what the record contains.    The reason for its exclusion from this general rule rests upon the principle that the production of a record is not required to prove what it does not contain, be-cause of the great inconvenience and expense of producing a vol-uminous record, covering many years, perhaps, to establish a purely negative fact which can be so much more expeditiously shown by some one who has carefully examined the record and is able to tes-tify that no entry of a given state of facts appears thereon.    Famil-iarity with the record is essential before the witness can positively state that no entry as to a certain matter is embraced in the record; otherwise, his testimony would be wholly speculative and would not possess that degree of certainty which is required to establish a controlling circumstance in a judicial investigation.    Hence it would seem that before the court should receive parol testimony that a record does not contain a particular entry, it should first be made to appear that the witness who offers to testify has examined the record and in this way fitted himself to give the court accurate

and reliable information as to its contents. A partial examination no more meets this requirement than no examination at all. Unless the entire record, or so much thereof as is pertinent to the inquiry, has been examined by the witness, his testimony should be rejected.

The testimony of the ordinary only tended to prove that there had been no administration granted during his term of office, that no administrator had accounted to him or made returns during this period, and that, so far as the witness was informed, the estate was unrepresented. This testimony was insufficient to affirmatively show the absence of administration subsequent to the abatement of the letters granted to the widow of the intestate and the time the witness was inducted into office. With reference to the testimony which was rejected, it is only necessary to observe that the plaintiffs did not undertake to show to the court that the witness who offered to swear there was no administration on the estate was familiar with the records in the ordinary's office or had ever examined them. The purport of his testimony was that, in point of fact, the estate was unrepresented at the time suit was brought, and not that the records showed this to be true.

The plaintiffs having failed to establish by competent evidence their right to sue, the judgment of nonsuit was proper.

*Judgment affirmed. All the Justices concur, except Fish, C. J., absent.*