### REED *v.* NORMAN *et al.*

HINES, J. J. J. Reed died intestate in 1898 or 1899, seized and possessed of the premises in dispute. He left surviving him only his widow, Rachel Norman Reed, and his son, J. C. Reed. Said widow and son continued to live on the premises in dispute until her death in 1920. No application for dower was ever made and no dower was set apart to the widow out of the lands of her husband. In 1902 Elizabeth Norman Reed, a daughter of said widow by a former marriage, died in Texas, leaving no property in the State of Georgia, and leaving as her sole heirs at law Pranthia Robinson, Fannie Middleton, Ruth Davis, Roland Reed, and Norman Reed. There was no administration on the estate of Rachel Norman Reed, who died intestate. J. B. Norman and D. J. Norman, children of Rachel Norman Reed, and

Pranthia Robinson, Fannie Middleton, Ruth Davis, Roland Reed, and Norman Reed, children of Elizabeth Norman Reed, brought their complaint against said J. C. Reed to recover their respective interests in in the promises in dispute, alleging that J. B. Norman ·and D. J. Norman were each entitled to an undivided one-eighth interest in said premises; that Pranthia Robinson, Fannie Middleton, Ruth Davis, Roland Reed, and Norman Reed were each entitled to an undivided one-fortieth; and that J. C. Reed was entitled to an undivided five-eighths interest therein. J. B. Norman and D. J. Norman are children of said Rachel Norman Reed by a former marriage to one Norman, and the other plaintiffs are representatives of a deceased daughter of Rachel Norman Reed by said former marriage, and J. C. Reed is a son of Rachel Norman Reed by a later marriage to J. J. Reed. Plaintiffs claim that Rachel Norman Reed took a child's part in the lands of J. J. Reed, which would be a one-half interest therein, and that as heirs at law of said Rachel Norman Reed they are entitled to an undivided three-eighths of the lands in dispute. On the trial of the case the plaintiffs introduced the following evidence: D. H. McDaniel testified that he was the administrator of the estate of J. J. Reed. He wound up the estate and was dismissed. Pending his administration, and within one year after the death of the intestate, the widow of said intestate stated to him that there were just two of them, meaning herself and J. C. Reed, and that she would take a child's part of the estate. She always claimed that there were just two of them, and that she preferred a child's part. The administrator asked her to take a dower, as he thought she could sell it and live off the income. The intestate left only one child, the defendant. J. B. Norman testified that he was the son of Rachel Norman Reed, and was present at the time the administrator had a conversation with her as to what interest she elected to take in her husband's property. This was just after the death of the intestate. She told the administrator she would take a child's part, as there were only two of them. The administrator told her she could dispose of a dower and live on the proceeds, but she declined to take a dower, saying she elected to take a child's part. J. C. Reed was the only child of Rachel Norman Reed by her marriage to J. J. Reed. Rachel Norman Reed and J. C. Reed sold gravel and timber from these premises. J. B. Norman, at the instance of his mother, about the time the administrator was to be dismissed, wrote to the ordinary, who was one J. C. Hix, to know if it was necessary for her to get a deed from the administrator to her interest, and the ordinary answered that it was not necessary. The ordinary's reply to this letter is as follows: "Jim: It is not necessary for Henry to make your mother a deed. The law gives her and Jud the land without any deed. J. C. Hix." It was alleged and proved that there was no administration upon the estate of Rachel Norman Reed.

J. C. Reed, in his own behalf, testified that he was born in March, 1883. He heard his mother say what she was going to take, many times. He said it was his father's request that they live and share the place equally, and that was her request. If she died before the witness died, she wanted him to have the place. He never heard her say she elected to take a child's part. His father's administrator came to their home

and said he was going to get his dismissal, which was fully five years after his father died. The administrator asked his mother if she wanted to take a dower, and she told him she did not, that she wanted the place left just as it was and left for the witness at her death.

The jury returned a verdict in favor of plaintiffs. The defendant's motion for a new trial was overruled, and to this judgment the defendant excepted. The motion for new trial is based upon the general grounds and upon certain specific grounds. *Held:*

1. The verdict was not contrary to law, and is supported by the evidence.

2. The defendant contends that the court erred in charging the jury as follows: "Under the evidence I charge you that there is but one question for your determination, and that is whether or not Mrs. Rachel Reed, within twelve months from the date of the granting of letters of administration upon the estate of James J. Reed, elected to take a child's part in his estate. If she did, the plaintiffs in this case are entitled to recover a three-eighths interest in the land in question." The errors assigned are: (*a*) because it was necessary for the plaintiffs to show that there were no debts of Rachel Reed, before they could recover as her heirs at law; (*b*) because as to the grandchildren it was necessary for the evidence to show that there was no administration on the estate of their deceased mother, before any recovery could be had by them in this action. *Held:* (*a*) Before heirs at law of a deceased intestate are entitled to recover land of the estate of such intestate, they must allege and prove that there was no administration on the estate of the intestate, or that the administrator, if there was one, assented to their bringing suit. *Greenfield* v. *McIntyre*, 112 *Ga.* 691 (38 S. E. 44); *Crummey* v. *Bentley*, 114 *Ga.* 746 (3) (40 S. E. 765); *Gornto* v. *Wilson*, 141 *Ga.* 597 (81 S. E. 860); *Strickland* v. *Fender*, 142 *Ga.* 132 (82 S. E. 561). But there is no necessity of an allegation and proof that the intestate owed no debts, the law expressly providing that, if there be no administration, the heirs may sue for lands of their intestate in their own right. Civil Code (1910), § 3933. Of course, if they recovered lands of their deceased intestate, they would hold them subject to be administered by the legal representative for the payment of debts. Civil Code (1910), § 3657.

(*b*) Before the grandchildren could recover, it was not necessary for them to allege and prove that there was no administration on the estate of their mother, who died prior to the deceased grandmother. Their deceased mother was not an heir at law of her surviving mother, under the familiar law that *nemo est hæres viventis.* Before the death of the ancestor, persons who will become heirs on his death are only heirs apparent; and no inheritance will pass to heirs apparent who die before the ancestor, which can descend to their children. *Beall* v. *Beall*, 8 *Ga.* 210; *Varner* v. *Boynton*, 46 *Ga.* 508, 513. Children stand in the first degree from the intestate, and inherit equally. The lineal descendants of children stand in the place of their deceased parents; and inherit, not from their deceased parents, but from the intestate parents of their dead parents. Civil Code (1910), § 3931. So in this case the grandchildren inherited their interests in these lands from their grandmother who survived their mother. In *Greenfield* v. *McIntyre*, supra, the two deceased daughters survived their intestate ancestor, and the

inheritance had vested in them on the death of the intestate. After these daughters died, their heirs undertook to recover their interests in lands, title to which had vested in these daughters on the death of their intestate ancestor.

(c) This instruction of the court was a correct principle of law applicable to the facts; and the court did not err in giving it in charge to the jury.

3. The defendant complains that the court erred in charging the jury as follows: "It is not necessary for the plaintiffs to show that she made any election by filing statement of such election in the office of the ordinary of this county, nor in fact that she made any declaration within the time prescribed by law of her intention so to elect to take a child's part. Her election may be shown by circumstances and by her conduct as well as otherwise." The errors alleged are: (a) that this charge is not the law; (b) that it invaded the province of the jury, who alone could say what was necessary or not necessary to be shown by the evidence to establish a fact; and (c) that it was an expression of opinion by the court on the evidence. *Held:*

(a) That this instruction states a correct principle of law. While it must affirmatively appear that the widow elected to take a child's part within the time prescribed by law, it is not necessary that her election be evidenced by a writing, duly signed, filed, and recorded in the office of the ordinary. This is one method of proving the fact of her election. Nor is it necessary to show her election by some declaration made within the time prescribed by law. Such declaration is one method of proving her election. The fact of election may be shown by circumstances establishing the same, as well as by direct evidence, such as a writing, or express declaration evincing such election. *Sewell* v. *Smith*, 54 *Ga.* 567; *Brown* v. *Cantrell*, 62 *Ga.* 257; *Rountree* v. *Gaulden*, 128 *Ga.* 737 (58 S. E. 346); Redfearn on Wills and Administration of Estates in Georgia, § 296.

(b) The court did not invade the province of the jury in giving this instruction.

(c) The court did not express any opinion upon the evidence in giving this instruction.

4. The defendant complains of the following charge to the jury: "If you find from the evidence that Rachel Reed, after the death of her husband, remained in possession of the lands in question for a period of more than seven years, during which seven years period she might have asserted her right to dower, and that after her seven-year period had elapsed she continued to remain in possession of the land and to exercise rights of absolute ownership to any interest in those lands, the presumption would arise that within the time prescribed by law she had elected to take a child's part in the estate of James J. Reed, and the burden would be upon the defendant to remove that presumption by evidence." The errors assigned are: (a) that this instruction is not the law; (b) that it is not authorized by the evidence; (c) that there are no pleadings to authorize any such charge; (d) that there was no such presumption as that stated in this charge; (e) that said charge is argumentative; and (f) that it places a greater burden upon the defendant than the law imposes. *Held:*

(a) That this instruction enunciates a correct principle of law applicable to the facts of this case. *Sewell* v. *Smith,* and *Rountree* v. *Gaulden,* supra.

(b) The other criticisms of this charge are without merit.

5. The defendant alleges that the court erred in charging the jury as follows: "If you find these to be the facts, and do not find from the evidence that the defendant has carried the burden and removed that presumption so arising, your verdict should be in favor of the plaintiffs." The errors assigned are: (a) that this instruction is not the law; (b) that it was not authorized by the evidence or pleadings; and (c) that it placed upon the defendant a greater burden than the law does. *Held,* that the errors alleged are without merit.

6. The defendant asserts that the court erred in charging the jury as follows: "If you find these are the facts but that the evidence submitted by the defendant has removed that presumption, your verdict ought to be in favor of the defendant, unless on the other evidence submitted by the plaintiffs, on the alleged declarations of Mrs. Rachel Reed during the twelve-months period, you feel justified in basing a verdict in favor of the plaintiffs." The errors alleged are: (a) that this charge is not the law; (b) because it places a greater burden on the defendant than the law authorizes; (c) that there are no pleadings or evidence to authorize the charge; and (d) that the same is confusing. *Held:* The court was dealing with the presumption of election arising from possession of the land by the widow from the death of her husband until her death, and for a long time after her right to dower was barred without having made any application therefor. Under the ruling in *Sewell* v. *Smith,* supra, such presumption would arise from these facts. The court instructed the jury that if the evidence submitted by the defendant removed this presumption, the verdict should be in his favor, unless from the evidence submitted by the plaintiffs as to alleged declarations of the widow during the twelve-months period, evidencing her election in due time to take a child's part, the jury felt justified in rendering a verdict in favor of the plaintiffs. This instruction states substantially a sound principle of law. It does not contain any inaccuracies which demand the grant of a new trial.

7. The court did not err in refusing a new trial.

> *Judgment affirmed. All the Justices concur.*

*W. E. Mann* and *W. Gordon Mann,* for plaintiff in error.

*McClure & McClure* and *M. L. Harris,* contra.