29349. MINCEY et al. v. MINCEY et al.
29350. MINCEY et al. v. WHITE.

JORDAN, Justice.
Both appeals involve actions for title to a 1/7th undivided share in land. The issues in both cases are identical but involve two separate tracts of land.
All parties claim through John W. Mincey who had seven children and who died intestate in 1904. One of his children, Luraville Mincey, predeceased him, dying intestate in 1902. Luraville was survived by a son, Paul Mincey.
The widow of John W. Mincey and the six children who survived him conveyed one of the tracts in question to W. B. Mincey and the other to J. L. Mincey. Both W. B. and J. L. Mincey were sons of John Mincey. The appellees in both cases claim title to the land through W. B. Mincey and J. L. Mincey.
The appellants, who were plaintiffs in the court below, are the widow and children of Paul Mincey and claim a 1/7th interest in the property, contending that Paul Mincey inherited the interest from John W. Mincey

by right of representation through his mother, Luraville. Appellees, however, claim that Paul Mincey was an illegitimate child of Luraville, and, thus, under Code § 113-904 could not inherit from his maternal grandfather. In support of their allegations appellees introduced into evidence the deposition of Charlie Raymond Waters, a relative of the Minceys, and Mrs. Ethel M. Gooch, a granddaughter of John W. Mincey. Mrs. I. O. Mincey White, who is the daughter of J. L. Mincey, introduced her own affidavit.

The trial court granted appellees' motions for summary judgment, holding that under Code § 113-904 illegitimates have no inheritable blood except by express statutory provision and although an illegitimate may inherit from his mother under Code § 113-904, he cannot inherit from his maternal grandfather. Furthermore, the court held that the affidavit and depositions were admissible under Code § 38-303 which permits pedigree to be proven through hearing testimony in the form of declarations of deceased relatives and general repute in the family. The court found that the evidence thus admitted established that Paul Mincey was illegitimate.

1. Code § 113-904 (Ga. L. 1816, Cobb 293; Ga. L. 1850, Cobb 299; Ga. L. 1855-56, p. 228) provides: "Bastards have no inheritable blood, except that given to them by express law. They may inherit from their mother, and from each other, children of the same mother, in the same manner as if legitimate. Legitimate and illegitimate children of the same mother shall inherit alike the estate of the mother. If a bastard dies leaving no issue or widow, his mother, brothers, and sisters shall inherit his estate equally. In distributions under this law the children of a deceased bastard shall represent the deceased parent."

Appellants claim that this statute did not bar Paul Mincey from inheriting a 1/7th interest in the land in question, and that he was entitled to his mother's share of John Mincey's estate. In effect, appellants contend that upon John Mincey's death an interest in the land descended to his daughter Luraville despite the fact that she predeceased her father. This question seems to be controlled by *Thigpen v. Thigpen*, 136 Ga. 541 (71 SE 790). In that case the court construed the language of Code §

113-904 (formerly, Civil Code 1910, § 3029) as barring an illegitimate from inheriting from his maternal grandfather. "The plaintiff brought suit to recover a distributive share in the estate of his maternal grandfather, who died subsequently to the date of the death of plaintiff's mother. It appeared from the evidence that the plaintiff was a bastard. Being such, he was not capable of inheriting from his grandfather; and consequently the court did not err in holding that he could not recover, and in directing a verdict accordingly. Civil Code (1910) § 3029."

This decision appears to be sound. Under Georgia law the general rule is that bastards have no inheritable blood, and this rule is explicitly made subject only to express statutory exceptions. The only exception pertinent to this appeal is provided in Code § 113-904 which permits illegitimate children to inherit "from their mother." Since Paul Mincey's mother predeceased her father, her estate did not include the realty in question. See *Morris v. First Nat. Bank of Atlanta,* 202 Ga. 51 (1) (42 SE2d 215). In order for Paul Mincey to have inherited the land in question, it would have been necessary for him to qualify as an heir of his grandfather and thus inherit directly from his grandfather by right of representation. See *Reed v. Norman,* 157 Ga. 183 (2b) (121 SE 310). However, there is not an express statutory exception which would permit an illegitimate child to inherit directly from his maternal grandfather. Consequently, if competent evidence established that Paul Mincey was an illegitimate child, he acquired no interest in the property in question upon the death of his grandfather, and appellants cannot recover.

2. We have carefully examined the affidavit and depositions in this record and conclude that they were properly admitted into the evidence and establish beyond doubt that Paul Mincey was an illegitimate child.

In her affidavit, Mrs. White testified that, "It was and is the general repute in the family that Luraville was never married," and also that her mother and father told her that Paul was illegitimate. The testimony of Mrs. Gooch is to the same effect. Furthermore, Mrs. Gooch testified that she knew from her own direct personal

knowledge that her aunt, Luraville, was never married, and also that her mother and father told her that Paul was illegitimate. Mrs. Gooch was in her teens at the time of Paul's birth.

Mr. Waters testified that he was born in 1890 and that Paul Mincey was born about five years later; that he was related to the Minceys and that he had personal knowledge that he never knew Luraville Mincey to have had a husband or to have lived with a man as his wife or to have ever been married.

The testimony of Mrs. Gooch and Mr. Waters that they never knew Luraville Mincey to be married was admissible as direct evidence of the fact sought to be proven. Marriage may be proven by anyone in a position to know the facts. *Brown v. State,* 208 Ga. 304, 306 (66 SE2d 745); *Sellers v. Page,* 127 Ga. 633 (4) (56 SE 1011). The occasion of the deponents to know all of the facts and understand them at such a young age are matters which affect the weight to be accorded their testimony, but do not affect its admissibility.

Code § 38-303 provides that, "Pedigree, including descent, relationship, birth, marriage, and death may be proved by either the declarations of deceased persons related by blood or marriage, or by general repute in the family, or by genealogy, inscriptions, 'family trees,' and similar evidence." The testimony of Mrs. White and of Mrs. Gooch that the reputation in the Mincey family was that Luraville was never married and that Paul was illegitimate, was clearly admissible pursuant to the above statute. The appellees offered no evidence to contradict this testimony.

3. Appellants contend that Paul Mincey may have been born of a common-law marriage, and that, therefore, the trial court erred in failing to consider the standard of proof of such a marriage. In support of their contention appellants directed the court to *Simeonides v. Zervis,* 127 Ga. App. 506, 508 (194 SE2d 324): "Common-law marriage is recognized in Georgia . . ., and the Supreme Court has clearly stated the criteria for determining the existence of a common-law marriage." See *Brown v. State,* supra.

It is clear from the language in that case that any inference or presumption of marriage arises only from

proof of cohabitation. No such evidence relating to Luraville Mincey was introduced in the instant case. Since there was no evidence upon which a finding of a common-law marriage could have been predicated, the trial court did not err in failing to consider the standard set forth in the *Simeonides* case.

4. The uncontradicted evidence in the instant case indicates that Luraville Mincey was never married and that Paul Mincey was illegitimate. Nevertheless, appellants contend that this evidence was insufficient to rebut the presumption of Paul Mincey's legitimacy.

The presumption of legitimacy, provided by Code § 74-101, arises only when a child is born in wedlock. Since there is no evidence in the record that Luraville Mincey was ever married, appellants cannot avail themselves the benefit of this statutory presumption.

There is an indication in a few Georgia cases, however, that in certain circumstances the fact of marriage may be assumed in order to raise the presumption of legitimacy. In *Gibson v. Mason,* 31 Ga. App. 584 (3) (121 SE 584), the court held, "[f]iliation being established, the child is presumed to be legitimate until the contrary is shown; and this rule applies to every case where the question is at issue. If a former marriage is necessary to sustain the presumption, it will be assumed until contrary proof is given." Thus, under this rule, the fact of marriage, necessary to sustain the presumption of legitimacy, will be assumed only when an individual can establish the identity of his parents (filiation). In the instant case no proof was offered which would tend to prove Paul Mincey's paternity. In such circumstances no presumption arises that Paul Mincey was a legitimate child.

The court did not err in holding that Paul Mincey was an illegitimate child and consequently incapable of inheriting from his maternal grandfather.

*Judgment affirmed. All the Justices concur.*

Argued November 12, 1974 — Decided January 28, 1975.

*Glenn H. Strother, Thomas M. Spence,* for

appellants.

*Tifton S. Greer, David A. Fox,* for appellees.