HEINKIN & PALMORE, plaintiffs in error, *vs.* ALLEN BAR-
BREY, defendant in error.

1. Where an action was brought for damages against commission mer-
chants, on the ground that, in violation of their contract to hold cer-
tain cotton until the 1st of March, they had, to the great loss of the
plaintiff, sold it on the 1st of the previous January, a statement by the
plaintiff to defendant's agent, made after the sale took place and the
controversy had arisen, that he would have been satisfied if the cot-
ton had brought a certain sum, (which was less than that claimed,) is not
evidence. It is, at best, but an offer of compromise, not acted upon
by the parties.

2. Where the defendant in an attachment claimed $980 88, and the bond
and declaration followed the attachment, as to the amount, and the
proof is such as to justify a verdict for that amount: *Held*, that a
verdict of a jury, for the plaintiff, for $9.80 88, will be taken, (nothing
otherwise appearing,) to be a verdict for $980 88, the amount sworn
to and claimed by the plaintiff.

Charge of the Court.    Evidence.    Certainty.    Before
Judge HARRELL.    Randolph Superior Court.    May Term,
1869.

Barbrey made affidavit that Heinkin & Palmore were in-
debted to him $980 88, and resided out of this State. There-
upon, an attachment issued. His petition averred that they
owed him that sum of money, because on the 27th of Decem-
ber, 1867, in consideration of his shipment to them of twelve
bales of cotton, they advanced him $300 00, at one *per cent.*
per month, and agreed not to sell his cotton till the 1st of
March, 1868, or after that, and, disregarding said promise,
did sell it, on the 10th of January, 1868, at but fifteen and
three-fourths cents per pound, to his damage, because on said
1st of March it would have sold for twenty-eight cents per
pound.

The allegations in the petition were testified to by Barbrey,
and one Jackson, who was defendant's agent, at Cuthbert,
Georgia, and received the cotton. JACKSON further testified
that said sale was below the market price in New York,
where defendant lived, on the 10th of January, 1868; that
it was worth, on that day, more in Cuthbert, than said price

at which it was sold, and that had it been held until the 1st of March, 1868, it would have brought from twenty-four to twenty-six cents per pound; that, as defendant's agent, he offered to pay plaintiff the balance due him by the account of said sale, and that he refused to take it, because of the violation of said contract, to hold his cotton. Upon cross-examination he said, that, not as plaintiff's agent, but as defendant's agent, and as the mutual friend of both parties, at plaintiff's request, he wrote to defendants, on the 30th of January, 1868, trying to effect a settlement of the matter, in which letter he stated that plaintiff would have been satisfied had his cotton been sold at sixteen and a half cents per pound.

It was shown, by cotton dealers, that, at Cuthbert, cotton was selling on the 10th of January, 1868, and on the 1st of March, 1868, at from fifteen to fifteen and a half cents per pound, and that it cost about six cents per pound to carry it to New York.

Defendant's counsel offered in evidence said letter of Jackson, and another by him to defendants, dated the 5th of February, 1868. It seems that the only material statement in them is the statement aforesaid, as to what would have satisfied plaintiff, and that defendants did contract to hold said cotton till the 1st of March, 1868, and yet sold it on the 10th of January, 1868, making it nett less than it would then have done in Cuthbert. The Court rejected the letters. He charged the jury that if defendants agreed to hold the cotton till the 1st of March, and advance plantiff $300 00, and in consideration thereof, plaintiff shipped to them said cotton, and they, contrary to the contract, sold it before the 1st of March, and that, after the sale, cotton rose and was on the 1st of March higher than it was at the date of the sale, plaintiff should recover, as damages, the difference between the price for which it sold and the price at which it would have sold on the 1st of March; if plaintiff had never received any of the proceeds of the sale, he ought to recover what it would have sold for on the 1st of March, less the $300 00, interest, commissions and expenses.

The jury brought in a verdict in these words: "We the

jury find for the plaintiff $9.80 88, with interest from the 1st day of March, 1868. LORENZO D. MUNROE, Foreman." Defendant's counsel objected to its being received, upon the ground that it was uncertain.

A new trial was moved for, upon the grounds that the verdict was contrary to the evidence and the principles of justice and equity, and was illegal, meaningless and incapable of being carried into legal effect; because the Court erred in rejecting said letters, in charging as he did, and in receiving said verdict. The refusal of a new trial is brought up for review.

E. L. DOUGLASS, J. H. TAYLOR, by R. LYON, for plaintiff in error.

A. HOOD, for defendant in error.

McCAY, J.

1. On the trial of this case in the Court below the defendants offered as a witness one Jackson, who swore that he was their agent, at Cuthbert, to ship cotton to them in New York. He stated, further, that after the defendants had sold the cotton, and Barbrey had objected to it, as contrary to the agreement, Barbrey had directed him to write to defendants, and that he had written a certain letter, by Barbrey's direction. This letter was then offered in evidence; that part of the letter pertaining to the matter in dispute, was as follows: "That he, Barbrey, would have been satisfied had the cotton brought sixteen and a half cents per pound." This letter was objected to and ruled out by the Court.

We are not sure that the evidence, as offered, proves that Barbrey ever made this statement. Jackson does not say in his parol evidence exactly what Barbrey did say, nor does it anywhere appear that Barbrey did in fact say this. All we have is the letter which Jackson wrote to his principals, in New York. It is true, he says he wrote by Barbrey's request, or direction, but it must be remembered that Jackson was the agent of the New York men, and we doubt much if

his letter to them is evidence of what Barbrey said.   In his parol statement of what Barbrey told him, this statement is not to be found.    But admitting that Barbrey made the statement, is it any evidence?   The proof of the contract, that the New York house was to keep the cotton till March, is overwhelming.   Jackson, the agent, admits it in terms, and Barbrey swears it positively; indeed, there is nothing in the record casting the least doubt upon that fact.   Nor does this statement, claimed to be Barbrey's, at all tend to raise any such doubt.   It might well be that the contract existed, as proven by Jackson and by Barbrey, that the defendants had violated it, and yet Barbrey might have said, that had they sold the cotton at the full market price, on the day of actual sale, he would have been satisfied.   Evidently the meaning is, they have not only not kept the contract, by keeping the cotton till March, but they have sold it for less than the market price, on the day of sale.   He says he would have been satisfied had they sold it so and so.   They did *not* sell it so and so.   Even if the proof had shown that, in fact, they had sold the cotton for the very price Barbrey, by the letter, said he would have been satisfied with, yet Barbrey has a right to stand on his contract, and he is not bound by any offer to take less than its terms, unless the parties had acted upon it.   At best, it was an offer of compromise and is not evidence against Barbrey.

2.  The affidavit in this case claimed $980 88.   The declaration filed, also, claimed this amount, and the proof justifies a verdict for that amount, or about that.   At any rate, had that amount been found in writing, plainly set forth, there is from the record evidence to sustain it.   The verdict was for the plaintiff for "9.80 88."   Taking the affidavit, the declaration, and the proof together, it is very plain that the jury meant $980 88.   A verdict for nine dollars and eighty cents and eighty-hundredths of a cent, would be so strange and unusual a verdict that every intendment ought to be against it, and our judgment is, that this verdict is for $980 88.

Judgment affirmed.