BRUNSWICK & WESTERN RAILROAD CO. v. WIGGINS.

1. While a jury trying a case should give to the evidence of a witness only the weight to which it is, in their opinion, entitled, yet they can not, in the determination of the issues involved, because of the fact that a particular witness was in the employ of one of the parties, arbitrarily disregard his testimony ; and a proper request to (in effect) so charge should not have been refused.

2. To entitle the defendant to the opening and conclusion of the argument in the trial of a case arising ex delicto, when the act complained of was not one which, under the law, could be justified, it is necessary that the defendant by proper pleadings admit, not only the commission of the act which it is alleged was wrongful, but also such other facts as would entitle the plaintiff to have a verdict, without proof, for the amount claimed in the petition.

3. In the trial of an action brought to recover damages against a railroad company for injuries sustained by the running and operation of a train of cars, it was error to charge in such manner as to convey to the jury the impression that if they should believe that both the company and the person injured were equally negligent, the plaintiff could recover.

4. In an action instituted by a widow for the homicide of her husband, caused by the negligent operation of a train of cars by a railroad company, evidence going to show that the deceased, at the time he was killed, left no estate or property was inadmissible.

Argued May 7, — Decided July 19, 1901.

Action for damages.    Before Judge Hansell.    Berrien superior court.    August 14, 1900.

D. H. Pope, for plaintiff in error.

LITTLE, J.    An action was instituted by the defendant in error against the railroad company, to recover damages for the homicide of her husband, which she alleged was occasioned by the operation of a train of cars over defendant's railroad, at a public crossing. The evidence relied on by the plaintiff in the court below as a basis of recovery was substantially as follows: Robinson, the husband of the plaintiff, was a watchman at a sawmill located at a point near the railroad.    He was fifty-four years old at the time he was killed, was earning thirty dollars per month, and was in good health.    Among other things, it was his duty to fire up a tramway engine on the south side of defendant's road, near where he was killed, and to look after a lot of mules which were stabled on the north side of the railroad.    The public road crosses the railroad in going from the mill to where the tramway engine was stationed. Usually the trains of defendant's railroad stopped at that crossing. At the time of his death the deceased had no property or estate

other than his daily and monthly wages. Very early in the morning on which he was killed the deceased was at the mill, a few minutes before the train was to pass. When the train which killed Robinson approached the crossing, the bell on the engine was not tolled, nor the whistle blown, but the train ran over the crossing at a speed of from thirty to forty miles an hour, and stopped some distance beyond the crossing to put off a passenger at that station; then it was discovered that a man, who proved to be the husband, had been struck by the train on or near the crossing; the dead body was found on the south side of the railroad, and about thirty feet from the crossing. The track was straight for a considerable distance from the crossing, and there was nothing to prevent the deceased from seeing the train after he had gotten within eighteen feet of the side-track. The Carlisle mortality tables were introduced. The engineer testified, in behalf of the company, to the following effect: The station near which defendant's husband was killed was a flag-station; after he sounded the road-crossing signals he got the signal from the conductor to stop; he saw a lamp in the hands of some one, two or three feet from the crossing, when the locomotive was seventy-five or a hundred yards distant; when he had gotten within one or two car-lengths of the crossing, he saw that the lamp was held by some one who attempted to cross the track in front of the engine, which was running at about twenty miles an hour; he stopped the train about one hundred and twenty-five yards from that point and backed up near the crossing, where the body of the deceased was found. Usually the train stopped on the crossing, This occurred between three and four o'clock in the morning. The bell was rung, and the speed of the train reduced from about thirty-five or forty miles to about twenty miles per hour at the crossing. He was looking forward, and first saw the light when he was about one hundred yards distant, and was checking the speed of his train. The deceased attempted to run across in front of the engine. A man standing at the crossing could have seen the train a mile and a half. When he first saw the light it was eight or ten feet from the track, and it appeared that the person holding it ran from that point in front of the engine.

The fireman also testified for defendant as follows: He was on the engine that killed the deceased; as the train approached the station he was ringing the bell. He saw a lamp held by some one

going down to the track from the mill on the north side; it remained stationary until just before the train reached the crossing, when the man holding the lamp stepped on the track in front of the engine. The whistle was sounded for the crossing at the blowpost. Witness saw the light of the lamp as it was brought down to the side of the road, as if a person was walking with it. He first saw it when the engine was at the blow-post. The bell was rung until the crossing was passed, and just as the man holding the lamp (who was the deceased) stepped in front of the engine the pilot of the locomotive struck him, and threw him on the other side. The engineer then said that he thought he had killed the watchman. The train stopped and then backed, and the engineer went back. "No alarm was given to the engineer by me when the man holding the light was first discovered, because I thought he was going to wave down the train, but the light made no signal to stop." On this evidence the jury returned a verdict for the plaintiff for $1,500. Defendant made a motion for a new trial, which was overruled, and it excepted. Other grounds of the motion for a new trial than those herein specifically considered and passed on allege that the trial judge erred in the rulings therein set out. After having given these careful consideration, we are of the opinion that none of them presents sufficient legal cause for the reversal of the judgment and the grant of a new trial. While some of the rulings are subject to criticism, the causes of error alleged do not have such a material bearing on the rights of the plaintiff in error as, of themselves, to work a reversal.

1. One of the grounds of alleged error is, that the trial judge refused, on a proper request, to charge the jury that the evidence of persons in the employment of the railroad company, in the absence of anything to discredit or contradict such evidence, can not be arbitrarily disregarded. Undoubtedly this is a sound proposition of law. The jury can not arbitrarily disregard the evidence of any witness, which is not contradicted or discredited by other evidence or circumstances. The jury should regard the testimony of every witness sworn. They are not obliged to believe it, but it is their duty to give to the evidence of witnesses the weight to which, in their opinion as conscientious men seeking after the truth, they believe it is entitled; but the employment or business of a witness affords no reason why his evidence should arbitrarily or without

reason be disregarded. *W. & A. R. Co.* v. *Beason,* 112 *Ga.* 553; *Ga. R. Co.* v. *Wall,* 80 *Ga.* 202. It is urged that, in view of the violent· and unwarranted attack made by the plaintiff's counsel on rail- roads generally, and the witnesses of the railroad in this case as· such, the request was called for as a matter of justice. This may be so. Certainly such attack, if made, was, to say the least, im- proper under the evidence in this case; but we can not consider the refusal to charge in the light of such an attack, because no ques- tion concerning it was made before the trial judge and passed on by him, nor do the details of it appear in the record. If it were· otherwise, it is possible that the fact that it was unwarrantably made might call for a ruling which would reverse the judgment on that ground; but in any event, as a matter of law, the refusal to· give the charge requested was error.

2. For the purpose of securing the opening and conclusion in the· argument of the case before the jury, the defendant proposed to· amend its plea by admitting that the petitioner's husband was killed by a locomotive engine of the defendant, which was at the time· running at the rate of from twenty to twenty-five miles an hour over a public crossing; that the deceased was of the age alleged in the petition, and was in good health; and that the defendant as-· sumed the burden. This amendment was rejected by the trial judge as being insufficient to change the burden of proof and to· give the defendant the right to open and conclude the argument, and, in our opinion, properly. The question of the right of the de- fendant to assume the burden of proof, and thus secure the open-· ing and conclusion of the argument before the jury, is, and has been for many years, a much vexed one. Our Civil Code, § 5160, de- clares: "The burden of proof generally lies upon the party assert-· ing or affirming a fact, and to the existence of whose case or defense. the proof of such fact is essential." Ordinarily this burden lies. upon the plaintiff, who, alleging certain facts to exist, claims a right· of recovery against the defendant; but when in such a case the defendant comes in and admits the facts stated in the petition to; be true, and sets up matter in avoidance, the defendant is the party who asserts the truth of the facts so set up, and the burden is shifted to him to establish the facts so pleaded, failing to do which the· plaintiff is, without more, entitled to a verdict. But just when admissions by the defendant of the truth of the facts asserted by

the plaintiff changes the onus is a matter which, because of contrary rulings of various courts and divergent opinions of eminent jurists, has not been made entirely plain.    In this State, however, the rule in a civil case arising ex contractu is now well settled; and to entitle the defendant to the opening and conclusion of the argument in such a case, he must admit by his plea, filed before the introduction of any evidence, facts which, without further proof, would entitle the plaintiff to a verdict for the amount claimed in the declaration.    *Abel* v. *Jarratt,* 100 *Ga.* 732; *Reid* v. *Sewell,* 111 *Ga.* 880; *Phœnix Ins. Co.* v. *Gray,* 113 *Ga.* 424.    For a very comprehensive and interesting discussion of this question see Bailey's Onus Probandi & Preparation for Trial, 603 et seq.    But a question which seems not to have been determined heretofore in this State by any ruling is, what admissions, in a case brought to recover damages for a tort or arising ex delicto, are sufficient to shift the burden of proof that rests on the plaintiff, and give to the defendant the right to open and conclude?    We are met at the threshold of this inquiry with a number of conflicting decisions from courts entitled to high consideration; concerning which Mr. Best says that all the authorities agree that when the damages claimed, or rather claimable, are nominal or liquidated, the right is not affected by their consideration.    Best's Right to Begin, §§ 46—49.    Mr. Bailey, in his work cited supra, says that the rock upon which the cases have split is, when the damages are to be assessed within the discretion of the jury.    In 2 Elliott's Gen. Pr. § 538, after laying down the proposition that the party who would be defeated if no evidence were given on either side must first produce his evidence, the authors cite upon the question of the right to open and conclude, on page 675, note 4, a number of adjudicated cases which support the doctrine that this rule applies where the plaintiff has only to prove his damages, but where the damages are liquidated, and nothing more than a mere computation of interest or attorney's fees, or the like, is necessary, the law is otherwise.    The compilers of the Encyclo. of Pl. & Pr. declare the rule to be, that in actions in which it is necessary for the plaintiff to prove the amount of his damages, whether arising ex contractu or ex delicto, he has the right to open and close, unless the defendant admits the whole amount of damages claimed by the plaintiff; which doctrine seems to be supported by adjudicated cases in the States of Arkansas, In-

diana, Maine, Missouri, Nebraska, New York, Ohio, South Carolina, Virginia, Wisconsin, and Wyoming, which will be found cited in note 3, page 189 of volume 15 of that work.

There is a class of cases, however, sounding in tort, to which, under the provisions of our Civil Code this rule does not apply, to wit: those to which a plea of justification may be interposed. Section 3891 of that code declares that in every case of tort, if the defendant was authorized by law to do the act complained of, he may plead the same as a justification; and that by such plea he admits the act to be done, and he is then entitled to all the privileges of one holding the affirmative of the issue. It will be noted that the provisions of this section apply only to cases arising ex delicto where the act complained of was authorized by law to be done, and in such a case it is not necessary that the admission, in order to entitle the defendant to the opening and conclusion, shall go to the extent of admitting the amount of the damages claimed by the plaintiff; but the defendant, by admitting the act to be done, is entitled to the privileges of one holding the affirmative of the issue. It is true, then, that the provisions of this section do not apply to all cases sounding in tort. Indeed, in the case of *Central Ry. Co.* v. *Morgan*, 110 *Ga.* 171, Mr. Justice Lewis, in delivering the opinion of this court, drew the distinction between the plea of justification and one denying negligence on the part of the railroad company in destroying property belonging to the plaintiff. He said: " Pleas of justification usually refer to such torts as malicious prosecution, assault and battery, libel, slander, and the like, and in them the defendant admits committing the acts complained of, and claims justification for his conduct. In this sort of a tort, however, of injuring property by the running of a railroad-train, we do not well see how there can be any plea of justification," etc. So that our conclusion is, that in actions brought to recover damages for an act of a defendant, where the latter was authorized by law to do the act complained of, it is not necessary, to entitle him to the opening and conclusion of the argument, that he shall admit that the plaintiff is entitled to recover the amount of damages which he claims; but he is entitled to these privileges on filing a plea, at the proper time, by which he admits that he did the act complained of. But in cases arising ex delicto where the defendant was not authorized by law to do the act complained of,

his right to the opening and conclusion of the argument must be based on the general rule previously stated; and such admission must not only go to the extent that the defendant did the act, but must go further, and admit every material allegation made in the petition which would authorize the plaintiff to recover without any proof on his part. In the case of *W. & A. R. Co.* v. *Brown,* 102 *Ga.* 13, it appeared that the defendant in error had instituted an action against the railroad company to recover damages for the negligent killing of a jennet belonging to the plaintiff. The defendant company admitted the killing and claimed the right to open and conclude. This right was denied, and this court, in passing upon that point, said : " The effect of the admission did not go far enough to shift the burden. To entitle the plaintiff to recover he must have shown two things: the killing; the value. The killing being shown, the law would presume negligence; but it would not have presumed a value, as we understand it. The burden is not shifted until the admissions show a prima facie right to recover, to rebut which the defendant undertakes. So long as any portion of the burden of making out his case by proof rests on the plaintiff, he is entitled to open and conclude, unless the defendant introduces no evidence." In the *Morgan* case, supra, where the suit was instituted to recover damages from the company for the killing of a registered Guernsey cow by the running and operation of its train, it was ruled that in order to entitle a defendant to open and conclude he must in his answer admit enough to make out a prima facie case for the plaintiff. So it must be ruled in this case, that the court did not err in refusing to allow the defendant to open and conclude the argument on the plea which was sought to be filed for that purpose, but that, in order for defendant to have obtained the desired privilege, the plea should have gone further and admitted such facts as would have entitled the plaintiff to a prima facie right to recover the amount of damages stated in her declaration ; otherwise the burden of proof to establish the amount of her recovery would have still remained on her. The admission only of her right to recover some amount still left on her the burden to establish by evidence the amount of damages which she sustained ; without it she would not be entitled prima facie to a verdict.

3. Error is also assigned because, after instructing the jury that no person should recover damages from a railroad company for in-

jury to himself or property, where the same is done by his consent or because of his negligence, and that if the deceased and the agents of the company were both negligent the plaintiff might recover damages, but they might be diminished by the jury in proportion to the amount of default attributable to him, the court charged as follows: "If the plaintiff himself was guilty of negligence and the railroad company was guilty of negligence, then you may take into consideration the amount of negligence on each side; if the deceased was guilty of negligence, you may then diminish the recovery which the widow would be entitled to in proportion to the default of the defendant to that of the deceased." Without further explanation this charge was error. Under it, if the jury believed that both the company and the deceased were equally negligent, then they could still find for the plaintiff. As a matter of law, the plaintiff can not recover for injuries inflicted by the negligence of an agent of a railroad company in the operation of its trains, if both the agent and the person injured are equally negligent at the time the injury is sustained. The Civil Code, § 2322, declares that no person shall recover damages from a railroad company for injury to himself where the same is caused by his own negligence, but if the complainant and the agents of the company are both at fault, the former may recover, but the damages shall be diminished by the jury in proportion to the amount of default attributable to him. This section of the code has been repeatedly construed by this court. See *Southern Ry. Co.* v. *Watson,* 104 *Ga.* 243. In the case of *Central R. Co.* v. *Newman,* 94 *Ga.* 560, it was ruled, in reference to this subject, that, "where the injury complained of was the result of mutual negligence by the plaintiff's servant and the defendant, there can be no recovery unless the servant was less in fault than the defendant." In the case of *Macon & Western R. Co.* v. *Winn,* 19 *Ga.* 445, Judge Lumpkin, in discussing the principle now under consideration, said: "And the law, in conformity with common sense, declares that if both parties are equally in the wrong, neither can or ought to maintain an action against the other." In the case of *Macon & Western R. Co.* v. *Davis,* 27 *Ga.* 119, McDonald, J., in delivering the opinion of the court, used this language: "It might so happen, in a case of mutual negligence, that the jury could not determine the preponderance of the blame, and some authorities say that in such case, there being no

mode of apportioning damages at law, there can be no recovery." In a very recent case, *Willingham* v. *Macon & Birmingham Ry. Co.*, 113 *Ga.* 374, this court approved the following charge on that subject. "If the defendant [the railroad company] was less negligent than plaintiff, plaintiff could not recover." It would seem, under these authorities, that the charge, that the jury might take into consideration the amount of negligence on each side, and if the deceased was guilty of negligence they might diminish the recovery to which the widow would be entitled in proportion to the fault of the defendant to that of the deceased, was error, for the reason that, if they were both equally negligent, the widow of deceased might, nevertheless, under this charge, have recovered; the duty devolving on the jury to make the recovery in proportion to the fault. In the *Watson* case, supra, which was reversed, the trial judge distinctly charged the jury that if the fault was half and half, one party as much at fault as the other, they would have the right to give the plaintiff damages. This was stating the conclusion that could be drawn from the charge in the present case, in plain words. That charge was held to be error; and because the same rule of liability might be taken by the jury from the charge in this case, a reversal of the judgment must follow.

4. The remaining ground of the motion which we have to consider is the assignment that the court erred in allowing plaintiff's counsel, over defendant's objection, to prove by the plaintiff herself what estate or property her husband had at the time he was killed, her testimony being that he had none. If there were no other reason which required a reversal of the judgment, the admission of this testimony, under the facts of this case, would certainly be sufficient to set it aside. If the plaintiff was entitled to recover at all, she was only so because of the negligence of the defendant company. The rights of each party are well established by law. If the negligence of the company was the cause of the homicide of her husband, then, whether the deceased was rich or poor, whether the defendant was a corporation or an individual, she was, in the absence of fault or want of care on his part sufficient to bar a recovery, entitled to have a verdict for the full value of his life. We are unable to see how the fact that deceased was or was not possessed of any estate at the time he was killed could affect the measure of the recovery or the liability of the defendant. Evi-

dently the evidence was not sought to be introduced for the purpose of fixing a liability on the defendant company; and it ought
not to have been received, because it might have affected the measure of the recovery.    Certainly it had nothing to do with the case;
and inasmuch as it was admitted as a part of the evidence, over
the objection of defendant's counsel, no other recourse is left to a
reviewing court than to set aside the verdict and grant a new trial.
              *Judgment reversed.    All the Justices concurring.*