## CENTRAL OF GEORGIA RAILWAY COMPANY *v.* MOTE.

This being an action against a railway company by an employee, for damages for alleged personal injuries, and there being no direct evidence of negligence, the plaintiff relying solely upon the presumption of law arising from proof that he was without fault, and the uncontradicted evidence of the defendant being of such a character as to rebut the presumption, it was error to overrule a motion for a new trial based upon the ground that the verdict was contrary to law and the evidence.

Argued June 16,—Decided July 13, 1904.

Action for damages.    Before Judge Butt.    Muscogee superior court.    October 17, 1904.

Between the cab of a locomotive and the tender is an open space, of about nine or ten inches from the one to the other,

covered by a piece of sheet iron or sheet steel that extends from the cab and is called an apron, on which the fireman walks or stands while performing his duties. This apron is fastened to the cab by means of iron hinges. To each end of the apron is attached one of these hinges, and to each hinge is attached a bolt that passes through a hole in the cab bracket (also made of iron), and is there held in place by a nut screwed on the bolt. The plaintiff was a fireman in the employment of the defendant, and the suit was for injuries from a fall, alleged to have been occasioned by the fact that a nut on a bolt which held the apron of the engine in place dropped off and the bolt fell out. He alleged, that the threads of the nut were worn, and that this was due to the negligence of the defendant; that the defendant was negligent in having only one nut on the bolt; that the nut was insecurely fastened; that the defendant knew, or by the exercise of ordinary care could have known, of the defective condition of the nut and bolt; and that the defendant was negligent in not properly inspecting the engine and repairing these defects. The verdict was for the plaintiff. The defendant's motion for a new trial, based on the grounds that the verdict was contrary to law and the evidence, was overruled, and it excepted. The other facts necessary to an understanding of the case are stated in the opinion.

*Little & Battle,* for plaintiff in error.
*Hoke Smith & H. C. Peeples* and *G. Y. Tigner,* contra.

COBB, J. There was no direct evidence showing negligence on the part of the defendant. The evidence was of such a character as to authorize the jury to find that the plaintiff was free from fault, and therefore he has the benefit of the presumption of negligence which the law gives under such circumstances. This presumption casts upon the defendant the burden of showing either that it was not negligent in any of the respects alleged in the petition, or, if it was, that such negligence was not a contributing cause bringing about the injury complained of. *Central Ry. Co.* v. *Weathers,* 120 *Ga.* 457, and cit. Treating the case as one in which it is established that the plaintiff was free from fault, a recovery by him should not be disturbed unless the evidence is of such a character as to demand a finding that the presumption of negligence has been overcome. If the evidence is of this charac-

ter, then the verdict was unauthorized and a new trial should have been granted. *Alabama R. Co.* v. *Scruggs*, 119 *Ga.* 70. The plaintiff was a fireman upon a freight-train which ran between Columbus and Montgomery. The trip consisted of a run from Columbus to Montgomery and return. This was the trip of the engine, although there might be a lay-over of hours or days at Montgomery before the commencement of the return portion of the trip. The trip on which the plaintiff was injured was one which began at Columbus on Saturday, May 19, 1900, and a return run from Montgomery beginning on the 21st and arriving at Columbus on the 22d. The evidence demanded a finding that the engine and its appliances were of the character ordinarily used by railroads operating similar trains, and therefore the presumption of negligence, so far as it related to the character of the machinery used by the company, was completely overcome. The evidence demanded a finding that before the engine was taken out of the shops at Columbus to be used on the trip it had been thoroughly inspected by persons competent to do that kind of work, and that there was no defect about the same that a proper inspection would disclose. The evidence also demanded a finding that the engine was inspected at Columbus by the engineer before he started on his run, and that the engine in all of its parts, including the apron, was in good condition, and no defect was apparent therein either as to any portion of the engine or the manner in which it was put together. The run was made from Columbus to Montgomery without any unusual incident. The presumption of negligence which the company had to rebut has been completely removed, unless the evidence is of such a character as to authorize the jury to find that the engine should have been subjected to a more minute inspection at Montgomery before the return portion of the trip was begun. The uncontradicted evidence shows that the engine was examined and inspected by the engineer before starting from Montgomery. The character and manner of the inspection thus made is described by the engineer as follows: "I went over the engine from one end of it to the other; and the nuts and bolts attaching the apron to the engine is a part of the engine that was included in my inspection. . . . My examination was made in going around the engine and looking at it with my eyes, both in Montgomery and in Colum-

bus.    I may have had a monkey-wrench in my hands while I was filling my rod-cups.    I didn't use it in testing the bolts and nuts, nor did I carry it for that purpose."

Did ordinary prudence require a more thorough inspection of the engine at Montgomery than is indicated by the testimony of the engineer?    There is evidence that it is not unusual for nuts upon the bolts of an engine to work off as a result of the vibration of the engine, in places where the vibration affects them. Several witnesses, men who had been engaged in the railroad service for years, testified that it was a most unusual occurrence for the nuts on bolts holding the apron in place to work off; one witness testifying that he had never known of an instance; another that he had known of only one instance in a number of years; and still another that he had known of only two instances in a period of many years service.    There was one witness, however, whose experience was different and who testified that it was not unusual for these nuts to work off.    There was evidence that persons skilled in the inspection and examination of engines could, by looking around at different parts of the engine, as was done by the engineer in this case, detect nuts which are loose or liable to come off; that while this could be done and such an inspection could be reasonably relied on, still, to be perfectly safe in reference to such matters, it was necessary to test the bolts and nuts with a hammer.    Did ordinary prudence require that the hammer test should be applied in Montgomery?    The engine had been thoroughly inspected at Columbus two days before. The run from Columbus had not been such as to indicate that the engine was not in good condition.    To the eye of the experienced engineer, who in this way examined every part of the engine, nothing appeared to put him on notice that there was any change in the condition of the engine since he received it from the shops in Columbus and had by his own inspection found it free from defects.    We think that the evidence demanded a finding that the engineer at Montgomery did all that ordinary prudence required.    To have required more at his hands as the representative of the company would have required extraordinary care to be exercised.    The truth of the case is that the occurrence is one of a character that often happens, where, notwithstanding all the diligence required under the particular conditions has been

exercised, machinery will get out of order and people will be injured. In such cases there is no negligence, and without negligence there can not be liability. The court erred in refusing a new trial. *Judgment reversed. All the Justices concur.*