## CENTRAL OF GEORGIA RAILWAY COMPANY *v.* MOTE.

1. While a trial judge may, within the restrictions prescribed by Civil Code, § 5331, direct a verdict, this court will in no case reverse a trial court for refusing to do so.
2. Where, in a suit for personal injuries against a railroad company, the damages were laid at $20,000, and the evidence was sufficient to ·authorize a verdict of $10,000, and the jury returned a verdict: "We, jury, find for the plaintiff the sum of ten thousand (10,000.00) and cost of suit," such verdict, where nothing otherwise appears, will be construed to be a verdict for $10,000, and the judgment entered thereon for ten thousand dollars should .not be set aside on the ground· that it was not authorized by the verdict.
3. In a suit for personal injuries against a railroad company, where the negligence was alleged to be due to the use of an unsafe·bolt, without proper inspection, which was visible only from under the running board on the engine, and it appeared from the testimony of the plaintiff, who was under no duty of inspection, that, before the commencement of the trip on which he was injured, he saw the bolt in question, and it appeared to be in• proper place and condition, it was not sufficient cause for the grant of a new trial that the plaintiff was permitted to testify in his own behalf, in effect, that the duties of the fireman with respect to cleaning the engine related to that part of the engine which was above the running board, over the objection that such testimony tended to restrict the rule of ' the ' company ' which provided that his duties with respect to cleaning the engine extended to the entire machinery.
4. Whether or not certain testimony of witnesses which was rejected by the 'court should have' been admitted, such ruling did not injure the defendant, where the same witnesses gave the same testimony in another part of their evidence, and it was before the jury in substance.
5. It will not require the grant of a new trial that the judge, while charging the jury upon the degree of care required of railroad companies in the matter of furnishing safe machinery to their employees and making proper inspection thereof, charged that such companies were bound to "reasonable care," where in other parts of his charge the term "ordinary care" was properly defined and was employed in connection with the term "reasonable care," both terms being· used in the same sense.
6. Where, during the progress of counsel's argument in conclusion, persons in the court-room applauded the speech, and the judge did not of his own motion suspend the case and rebuke the persons so applauding

and warn the jury to disregard the incident, and there was no motion by opposing counsel for a mistrial, but a request was made by him that the court call the attention of the jury to the impropriety of the applauding and warn them to disregard the incident, it was not sufficient cause for the grant of a new trial that the judge prefaced his remarks by stating to the jury: "I am requested to call your attention to the applause," etc., after which he proceeded in an appropriate manner to warn the jury against being influenced by the incident, and to impress upon them that their verdict should be based solely upon the evidence, and should not be influenced by any other cause.

7. The court did not commit error, while giving certain charges as requested, in adding thereto the converse of the propositions contained in the requests, and proper modifications and elaborations thereof.

8. In this case it was not erroneous for the judge to refuse to instruct the jury: "I charge you, gentlemen of the jury, that the evidence introduced before you of the railway employees can not be absolutely discarded or disregarded by you, and should not be, unless you find from the evidence introduced before you discredits or contradicts them. In that event you should give just such weight to their evidence as you think it deserves. You should not disregard the evidence of any witness which is not discredited either by evidence or circumstances.

9. There was no exception to the charge of the court sufficient to require a reversal of the judgment for any reason assigned; and certain requests to charge which were refused by the court, in so far as they contained sound legal propositions applicable to the case, were covered by the general charge.

10. Under the facts of this case, a verdict for ten thousand dollars was not excessive.

11. The evidence was sufficient to support the verdict.

Argued February 11,—Decided July 24, 1908.

Action for damages. Before Judge Martin. Muscogee superior court. March 23, 1907.

The plaintiff was employed by the defendant as a fireman to serve in the operation of its locomotive engines. On the 19th of May, engine number 1418, upon which the plaintiff was employed, left Columbus, Ga., on a trip to Montgomery and return. About 2 o'clock a. m. on the 22nd of May, when the plaintiff's service connected with the round trip was about to be concluded, but just before the engine was delivered to the yard crew in Columbus, while running at about four miles per hour, the plaintiff fell from the engine and sustained serious injuries. Attached to the engine was a tender and between the two was a space of about 8 inches. The duties of the plaintiff required him to be constantly over this space, and as an instrument of safety for the protection of the plaintiff and the engineer a metal apron had been provided which

covered the space between the engine and the tender. The apron was fastened to the tender by means of certain bolts arranged hinge fashion, so that the apron could be moved up and down. One tongue of the bolt was bolted to the floor castings of the engine, while the other end was inserted through the apron and made fast to the apron by means of certain taps which were screwed on to the end of the bolt which went through the apron. It was so arranged that the taps would be under the bottom of the apron, and would not be visible from the plaintiff's place of work while the apron was in position. It was contended that the threads to the bolt which passed through the apron were badly worn, and that on account of such condition the tap came off and the hinge became loosened and the apron worked out of position so as to leave the space between the engine and tender partly exposed, and that while the plaintiff was engaged in work his foot slipped in the hole, and in his effort to recover he fell and suffered the injury. It was contended that the defendant had not exercised ordinary care in its inspection of the engine and the apron in question, and that it was negligent in furnishing an appliance defective in the manner indicated, and in failing to discover the defect. On a former trial of the case the plaintiff recovered a verdict for $3,000, and the judgment refusing to grant a new trial was reversed by this court. 120 *Ga.* 593. In that case it was held, that the plaintiff had shown himself to be free from fault, and that upon proof of the injury the burden of proof was upon the defendant to show that its agents and servants had exercised all ordinary and reasonable care and diligence with respect to the matters which were charged to be grounds of negligence in the declaration; and that, the defendant having shown by uncontradicted evidence that the agents and servants of the defendant were in the exercise of all ordinary care and diligence in respect to the matters of negligence alleged, the burden of proof imposed by law upon the defendant was supported, and the plaintiff could not recover. On the next trial in the court below the plaintiff and defendant introduced substantially the same evidence as had been introduced on the former trial, but at the conclusion of the defendant's evidence the plaintiff, in rebuttal, introduced a witness who had not before been sworn as a witness in the case. Among other things, this witness testified, in effect, that he was a helper to a night foreman in the shops of the de-

fendant at Columbus at the time the plaintiff received his injury; that his hours of work were from 7 o'clock in the evening to 7 o'clock in the morning; that soon after the plaintiff had been hurt, to wit, between 4 and 5 o'clock in the morning, he had worked on the apron and fixed the bolt. With reference to these matters, the witness, among other things, said: "I worked on engine 1418 at that time. I worked on her apron and fixed a bolt on the left-hand side. Me and Mr. Cooper first taken the bolt and put a washer and two nuts, which is called a jam nut, on it. After we done that we found there was not enough on the bolt to hold the nuts, and I spoke to him about it, and he looked at it. He had me to take that bolt out. . . The apron on that engine was attached in this way. It was fastened with a hinge and two bolts, you know, at each end, that went through the casting of the engine something like this [referring to model]; put it on here, and the washer goes on here at the end [indicating on the model]. The left side of the apron was loose. It was plumb loose when I found it. The bolt was plumb loose, out of the casting, and no nuts on it at all. . . The reason I didn't leave the two nuts I first put on the bolt, the bolt was not sufficient to hold the nuts on it. The bolt had worked up and down so the threads were stripped, worked up and down and backwards and forwards, stripped. Then, after looking at that bolt, this here bolt was worn so bad [referring to bolt that attached the bolt that went through the casting to the hinge], it was not sufficient to hold the nut; and we took a chisel and cut that out and put a 5/8 bolt in there and a nut on it, and then tapped the nut to keep it from coming off. . . The hinge at that time had a rivet on it like the one which is in the hinge you now show me, only the rivet was worn out. It was an old apron. The rivet was about worn out, and I took a chisel and knocked the end of it off and put a bolt in there with a nut on it and tapped the end of it to keep the nut from coming off." On this trial the jury found a verdict for the plaintiff as follows: "We, jury, find for the plaintiff the sum of ten thousand (10,000.-00) and cost of suit." The defendant moved for a new trial on numerous grounds, which, as far as necessary, are stated in the opinion. The motion was overruled, and the defendant excepted. It excepted also to the overruling of a motion to set aside the judgment which was entered upon the verdict.

*Charlton E. Battle,* for plaintiff in error.

*Smith & Hastings* and *G. Y. Tigner,* contra.

ATKINSON, J. 1. One of the assignments of error complains of the ruling of the trial judge in refusing to direct a verdict in favor of the defendant upon proper motion at the conclusion of the evidence. While a trial judge may, within the restrictions pre-scribed by the Civil Code, §5331, direct a verdict in a proper case, this court will in no case overrule as erroneous a refusal to do so. *Western & A. R. Co.* v. *Callaway,* 111 *Ga.* 889 (36 S. E. 967); *Owen* v. *Palmour,* 115 *Ga.* 683 (42 S. E. 53).

2. In this suit for personal injuries the damages were laid at $20,000. The evidence, as will be seen from another division of this opinion, was sufficient to authorize the verdict for $10,000. The jury returned a verdict in the following language: "We, jury, find for the plaintiff the sum of ten thousand (10,000.00) and cost of suit." There was nothing in the pleadings or evidence to in-dicate that the plaintiff was seeking a recovery of anything other than dollars. Upon the verdict rendered a judgment was entered for $10,000. In its motion to arrest the judgment, the defendant insisted that the judgment should be arrested because the verdict did not expressly state the amount in dollars or money that the jury found to be due the plaintiff, and that the judgment rendered for an express amount in dollars was not authorized by the verdict. Considered in connection with the pleadings and in the light of the evidence, no other reasonable construction could be placed upon the verdict than that it was a verdict for $10,000. By giving the verdict this construction, there was no variance between the verdict and judgment, and the objection urged against the judgment was insufficient to require the court to set it aside. See, in this con-nection, *Heinkin* v. *Barbrey,* 40 *Ga.* 249; *West* v. *Bank of Ameri-cus,* 63 *Ga.* 230; Hopkins *v.* Orr, 124 U. S. 510 (8 Sup. Ct. 590, 31 L. ed. 523); Provo Mfg. Co. *v.* Severance, 51 Mo. App. 260; Gregory *v.* Gregory, 10 Mo. App. 589; Gulf Rȳ. Co. *v.* Fink, 4 Tex. Civ. App. 269 (23 S. W. 330); O'Docharty *v.* State (Tex.), 57 S. W. 657.

3. Certain rules of the company were introduced, and one of them specified the duty of the firemen as follows: "They must assist in cleaning and polishing their engines every trip and making repairs when required." The following question was propounded

to the plaintiff: "What part of the engine did the fireman clean?" Answer: "We cleaned above the running board." An objection was made to the admission of the testimony, on the ground that it restricted the rule of the company defining the duties of firemen. It was not contended that the fireman was under any duty of inspection, but the defendant insisted that it was the plaintiff's duty to assist in cleaning the entire engine, which would have imposed duties of cleaning below as well as above the running board, and had he performed his duty as required by the rule the condition of the alleged defective bolt might have been ascertained by him in the performance of his duties. The refusal of the court to exclude the testimony was not sufficient cause for the grant of a new trial. It elsewhere appears in the plaintiff's testimony that on the morning before the commencement of the trip he saw the bolt in question and that the nut then appeared to be tightly screwed and in its proper place. Being under no duty to inspect, if there was nothing to put him upon notice of a defect in the bolt, the plaintiff would not be precluded from a recovery because of the latter defect of which he did not know, and where he was not under any duty to inspect. The cleaning of the engine would probably have revealed nothing more than what the plaintiff casually saw.

4. The court upon appropriate objection excluded certain testimony of two of the plaintiff's witnesses, which tended to show that the dropping of the nut from the bolt was the result of the motion of the train, and was one of the ordinary risks which the plaintiff assumed, and that it was not lost on account of any defect in the bolt. It appears that the same witnesses were allowed, without objection, at other times during their examination, to testify substantially to the same effect as the testimony which was excluded. Under these conditions the ruling of the court was not sufficient cause for granting a new trial. *Bertody* v. *Ison,* 69 *Ga.* 317; *Southern Ry. Co.* v. *Ward,* ante, 21 (61 S. E. 913).

5. The court charged the jury: "If you believe from the evidence that the plaintiff was injured in the matter set forth in his declaration, that is, that there was a defect in this apron, and he fell in or stumbled over it, as he alleges in his declaration, and was injured, and you further believe from the evidence that he was without fault, then the presumption of negligence arises against the defendant company, and then it is incumbent upon the

defendant to relieve itself of that burden by showing either that it was not negligent, or, in other words, that it exercised all reasonable care and diligence in furnishing its machinery and in maintaining it." Error was assigned upon this charge, on the ground that the jury were instructed "that it is incumbent upon the defendant to show that it exercised all reasonable care and diligence in furnishing and maintaining machinery, its duty under the law being to exercise only ordinary care and diligence." The court also charged: "If, on the other hand, you do not believe that he was injured in the manner set forth, or that he was not free from fault, or if you believe that the defendant had exercised all reasonable care and diligence on its part in furnishing the machinery and in maintaining it and having it properly inspected, I charge you that the plaintiff would not be entitled to recover." Error was assigned upon this charge, upon the ground that it imposed upon the defendant the burden of "reasonable" care and diligence in furnishing and maintaining machinery, whereas its duty under the law is only to exercise "ordinary" care and diligence. It will be observed that the same objection was urged to each excerpt from the charge, and that the ground thereof was that the court employed the term "reasonable care" rather than "ordinary care." In other portions of the charge the court properly defined the meaning of ordinary care and clearly instructed the jury that the defendant was bound to "ordinary care." That term was used interchangeably with the term "reasonable care," and both were used in the same sense; so that the jury could not have been misled by the instruction complained of. Both words are used in the statute, the language being, "ordinary and reasonable care." Civil Code, §2321. Under these circumstances the charge complained of was not sufficient cause for the grant of a new trial, though it would have been better to have followed the language of the statute.

6. It appears from the recital of facts, that, during the argument of counsel for the plaintiff, spectators in the court-room applauded. The defendant's counsel requested the court "to call the attention of the jury, when the charge was delivered, that they were not to be influenced by the applause of the audience and the remarks of counsel; that such conduct is improper, and should be overlooked by the jury." The court complied with this request of counsel, prefacing his remarks, however, with the statement that:

"I am asked to call your attention to the fact that during the progress of the trial there was applause in the court-room." Error is assigned upon the prefatory remark of the court, "that counsel had requested such charge," and it is insisted that the instruction should have been given by the court of its own motion, and the jury should not have been advised of the defendant's request. The judge did not say that he adverted to the fact of the applause at the instance of the defendant's counsel. He merely said: "I am asked to call your attention," without saying by whom. But during the course of the instructions on that point the court warned the jury that they were not to be influenced by anything other than an honest endeavor upon their part to ascertain the truth, that they were to lose sight of the parties and treat the case as if the issues were between strangers, with only the ultimate object in view of ascertaining the truth of the issue. Under these conditions we do not think that the prefatory remarks complained of prejudiced the plaintiff in error. Under the ruling in *Patton* v. *State,* 117 *Ga.* 230 (43 S. E. 533), it would have been proper for the judge, on his own motion, without any request, to have suspended the case and rebuked the spectators for the disturbance, and warned the jury to disregard the incident; but where he did not do so, and there was no motion for a mistrial, and the judge, after request was made, did so warn the jury, it was not sufficient cause for the grant of a new trial that he prefaced his warning by the statement that he did so upon request. It would have been better, however, to have given the admonition without referring to the request.

7. The judge, upon request of counsel for the defendant, charged the jury: "If the plaintiff in this case was injured by reason of a defect alleged to exist in the machinery or appliances, if this defect in the machinery or appliances, or in the manner in which it was adjusted, could have been ascertained by the plaintiff as well as by the defendant, and if both the plaintiff and the defendant had equal opportunities of discovering such defect in the machinery or appliances, or in the manner of its attachments, on the date that the accident occurred, then the defendant would not be liable for any injury resulting to the plaintiff; and before the plaintiff would be entitled to recover, it must be made to appear that the master, that is, the defendant company, knew or ought

to have known of the defects or danger in the machinery or appliances, and the manner in which it was attached; and it must further be made to appear that Mote, the plaintiff, did not know of such alleged defect in the appliance, or the manner of its attachment, and that he did not have equal means with the defendant railway company of knowing such alleged fact; and it must further be made to appear that he could not have ascertained the alleged defect in the appliance, or its manner of attachment, by the exercise of ordinary care. If it should appear from the testimony that the alleged defect in the appliance, or the manner of its attachment to the engine, was open and obvious, or if the plaintiff had equal opportunity with the defendant of discovering its condition, or if he could have, by the exercise of ordinary care, known its condition, then he would not be entitled to recover." After giving this charge the court added: "In that connection I charge you this: in ascertaining whether or not the plaintiff had equal opportunity with the defendant you must look to the testimony in the case. You see who the plaintiff was and what his duties were on that occasion, and see whether or not the duty of the defendant was the same as that of the plaintiff in making examinations for the purpose of finding out defects. If it was not the same, or if the defendant company had better means and opportunities of ascertaining these things than the plaintiff, why then he would not be charged with the same degree of inspection that the defendant would be." Error was assigned upon the added charge, on the ground that it was a restriction upon the principle of law requested, and had the effect of destroying the force of the request; and further, because said added part does not undertake to explain or set forth the duties of the plaintiff under the circumstances.

The court also, upon request, charged the jury: "If the jury believe under the evidence in this case that the plaintiff was injured, and in the manner claimed in his petition, and should further believe that such injury was occasioned by a latent or hidden defect in one or more of the appliances furnished by the company to be used by the plaintiff, and if you should further believe that such latent or hidden defect could not have been discovered by the exercise of ordinary care and diligence, such as proper inspection made at proper times and places, then the company would not be liable to the plaintiff, notwithstanding the jury may believe

that the plaintiff was injured in consequence of such latent or hidden defect." After so charging, the court added the following charge: "On the other hand, gentlemen of the jury, if this plaintiff was injured on account of a defect in this appliance, although it may have been a latent defect, if, by the use of ordinary care and diligence on the part of the company or its inspectors, it could have discovered this latent defect, and they failed to do so, and failed to exercise ordinary care and diligence, in consequence of which failure the plaintiff was injured, then I charge you that the plaintiff could recover, provided he was not at fault and contributed nothing to the injury." Error was assigned upon the charge, on the ground that it was a repetition of the duty of the defendant without reference to the duty of the plaintiff under the same circumstances; and further that the effect of the charge was to relieve the plaintiff from the exercise of ordinary care and diligence to ascertain the hidden defect, if it existed.

The court also, upon request, charged: "An employee of a railroad company, who is charged with the duty of assisting in the running and operation of its train of cars, or in the use of the machinery and appliances furnished in the furtherance of the company's business, assumes the risks of all perils incident to his employment, necessary, ordinary, and extraordinary, except the negligence of the company, its servants and agents; and if the jury should believe from the evidence in this case that the occurrence out of which the injury to the plaintiff arose, if he was injured, was either a pure casualty or one of the ordinary risks of the particular employment in which the plaintiff was then engaged, no liability arose against the defendant because of the injuries he sustained." After so charging, the judge added: "In other words, gentlemen of the jury, if the injury that the plaintiff sustained was occasioned by the ordinary risks which he assumed as an employee of the company, and not occasioned by any negligence of the defendant, why then of course the defendant would not be liable. In other words, if the defendant was not negligent in this case the plaintiff can not recover." Error was assigned upon the added charge, on the ground that its effect was to destroy the entire force of the charge requested, and to destroy the effect of a previous charge as to the hazards assumed by the plaintiff; and further because the added charge was based solely upon

the theory of the defendant's lack of negligence, without reference to the negligence of the plaintiff.

The court also, upon request, charged: "I charge you further, gentlemen, that a railway company is not an insurer of its employee's safety. The law imposes upon the railway company the duty of exercising ordinary care and diligence to furnish reasonably safe machinery, and to subject the same to reasonable inspection— such an inspection as a reasonably prudent man would give. If the railway company performs this duty and one of its employees is injured, it will not be liable." After so charging, the court charged: "That is to say, gentlemen of the jury, if the plaintiff was injured by the machinery and appliances furnished the employee, [in] the furnishing of which and the maintenance of which the defendant has exercised all reasonable care and diligence, in a case like that, that is, as to inspecting it and keeping it in repair, and, notwithstanding the exercise of ordinary care and diligence, the plaintiff was hurt, why of course the plaintiff would not be entitled to recover, for in such case the defendant would not be liable." Error was assigned upon this added charge, upon the ground that it was a repetition of the duties of the defendant without reference to the duties of the plaintiff, and had the effect to destroy the charge as requested, and to withdraw it from the consideration of the jury; "and especially is this true with respect to the language of the court: 'why, of course, the plaintiff would not be entitled to recover, for in such case the defendant would not be liable.'"

The additions to the several requests to charge were not erroneous for the reasons assigned. They did not in any instance amount to an improper restriction, but were simply statements of the converse of the propositions referred to, or proper qualifications or elaborations thereof.

8. One of the exceptions was to the refusal of the judge to charge the jury as follows: "I charge you, gentlemen of the jury, that the evidence introduced before you of the railway employees can not be absolutely discarded or disregarded by you, and should not be, unless you find from the evidence introduced before you discredits or contradicts them. In that event you should give just such weight to their evidence as you think it deserves. You should not disregard the evidence of any witness which not is discredited

either by evidence or circumstances." In the cases of *Western &
A. R. Co.* v. *Beason,* 112 *Ga.* 553 (37 S. E. 863), *South Carolina
R. Co.* v. *Powell,* 108 *Ga.* 437 (33 S. E. 994); *Ga. So. Ry. Co.* v.
*Sanders,* 111 *Ga.* 128 (36 S. E. 458); *So. Ry. Co.* v. *Thompson,*
111 *Ga.* 731 (36 S. E. 945); *Ga. R. Co.* v. *Wall,* 80 *Ga.* 202 (7 S.
E. 639); *Macon R. Co.* v. *Revis,* 119 *Ga.* 332 (46 S. E. 418);
*Seaboard A. L. Ry.* v. *Walthour,* 117 *Ga.* 427 (43 S. E. 720);
*Ga. & Ala. R. Co.* v. *Cook,* 114 *Ga.* 760 (40 S. E. 718); *White* v.
*So. Ry. Co.,* 123 *Ga.* 360 (51 S. E. 411); *Central Ry. Co.* v. *Mote,*
120 *Ga.* 593 (48 S. E. 136); *Central Ry. Co.* v. *Weathers,* 120 *Ga.*
475 (47 S. E. 956), and *Alabama R. Co.* v. *Scruggs,* 119 *Ga.* 70
(45 S. E. 689), the question under discussion was whether the
respective verdicts were contrary to law and the evidence. In the
opinions or the headnotes it was several times stated that a verdict
was contrary to evidence, because there was nothing on one side
save the statutory presumption raised by the proof of an injury or
death caused by a railway train, while on the other there was the
uncontradicted evidence of the employees in charge of the operation
of the train, showing positively how the injury occurred, and that
there was no negligence on the part of the railway or its agents.
What is said in an opinion as to the sufficiency of evidence to sup-
port a verdict, or to show that the evidence in a particular case
demanded a certain finding, is not always appropriate as a charge
to be given by the court to the jury. In *Brunswick & Western R.
Co.* v. *Wiggins,* 113 *Ga.* 842 (39 S. E. 551, 61 L. R. A. 513), a
request was made to the court to charge the jury, which appears
from the original record on file to have been in these words: "The
testimony of the employees of the railroad company, in the absence
of anything to discredit it, or contradict it, can not be arbitrarily
disregarded." It was held that this request embodied a sound
proposition of law; and it was further said: "The jury can not
arbitrarily disregard the evidence of any witness, which is not
contradicted or discredited by other evidence or circumstances.
The jury should regard the testimony of every witness sworn.
They are not obliged to believe it, but it is their duty to give to
the evidence of witnesses the weight to which, in their opinion
as conscientious men seeking after the truth, they believe it is
entitled; but the employment or business of a witness affords no
reason why his evidence should arbitrarily or without reason be

disregarded." It will be. seen from this that the court did not say that the witnesses must be believed, but that their evidence could not be arbitrarily disregarded, in the absence of anything to discredit or contradict such evidence; that is, that the jury should consider the evidence of a witness and give to it the weight to which, in their opinion as conscientious men seeking after the truth, they believed it to be entitled. There were two controlling words in the request dealt with in the *Wiggins* case which were not the same as those in the request preferred in the present case. There the expression was that the evidence of persons in the employment of the railroad company can not be *"arbitrarily"* disregarded. Here the request was to instruct the jury that such evidence could not be *"absolutely"* disregarded. The word "arbitrarily" means in an arbitrary manner, and "arbitrary," as defined, in the Standard Dictionary, means, "fixed or done capriciously or at pleasure; without adequate determining principle; not founded in the nature of things; non-rational; not done or acting according to reason or judgment; depending on the will alone; absolutely in power; capriciously; tyrannical; despotic." The word "absolutely" is defined to mean, "in an absolute degree or manner; without limitation; completely." A comparison of these two definitions will show that the words "arbitrarily" and "absolutely" are susceptible of quite different meanings; and a charge that the jury can not absolutely reject a thing may well be understood by them to mean that they can not reject it entirely or completely; while a charge that they can not arbitrarily do a thing means that they can not do it capriciously and without judgment or reason. Again, in the *Wiggins* case the request to charge was that "in the absence of anything to discredit it, or to contradict it," the testimony of the witnesses could not be arbitrarily disregarded. Here the request was that the evidence of the railroad employees introduced before the jury could not be "absolutely discarded or disregarded by you, unless you find from the evidence introduced before you discredits or contradicts them." This limited the medium of discrediting or contradiction to the evidence introduced before the jury. The Civil Code (§5146) declares, that, "In determining where the preponderance of evidence lies, the jury may consider all the facts and circumstances of the case, the witnesses' manner of testifying, their intelligence, their means and opportunity for know-

ing the facts to which they testified, the nature of the facts to which they testified, and the probability or improbability of their testimony, their interest or want of interest, and also their personal credibility so far as the same may legitimately appear from the trial. The jury may also consider the number of the witnesses, though the preponderance is not necessarily with the greater number." It will be seen at a glance that the request restricted the jury in their determination of the weight to be given to the evidence much more closely than does the section cited. While it may be a sound rule that the evidence of no witness should be arbitrarily or capriciously disregarded, it may not always be proper to select certain witnesses of one side or the other by designation or name and charge in regard to them and the credence to be given to them in a way which may lead the jury to differentiate them from other witnesses as to the matter of arbitrarily disregarding, without informing the jury also that a similar rule applies to other witnesses similarly situated. But this is merely suggestive; and without regard to it, the distinction between the charge dealt with in the *Wiggins* case and that invoked in the present case clearly appears from what has been stated above. As the decision in the *Wiggins* case is not controlling, it is not necessary to deal with the request which was made to review and overrule it.

9. In the 9th ground of the motion for new trial counsel for defendant assigned error upon certain excerpts from the court's charge, and in other grounds complained of the refusal of the judge to charge certain requests which have not heretofore been dealt with in this opinion. Upon careful consideration thereof we do not think that any of these grounds are sufficient cause for the grant of a new trial, and do not deem it necessary to make further reference thereto than the announcement made in the 9th headnote.

10. It is complained that the verdict of the jury is so excessive as to show extreme bias upon the part of the jury, and for that reason that a new trial should be granted. There was evidence from which the jury could have found that the plaintiff was 41 years old and was a fireman on the railroad and receiving $2 per day as such fireman, and that he had a reasonable prospect of promotion and increase in his earning capacity; that the plaintiff, in attempting to avoid injury by falling in the space between the engine and tender, which was exposed by reason of the shifting of the position

of the apron, fell from the car, striking his back against a rail on one of the side-tracks of the defendant; that he suffered great pain, and was immediately attended by his own physician and the physician of the defendant; that he was confined to his bed for about three months, and suffered much pain. Testifying in his own behalf, the plaintiff said: "In about two weeks I began to pass blood and mucus from my bladder in my urine. I passed that, I suppose, about six weeks, and Dr. DesPortes had to take my water several days before I could make it. My digestion was all right, I suppose. My back was the biggest trouble, and head, and my kidneys were all out of order. After I got up I had relapses. I would be up and down. I dragged around home there I suppose a month or two; knocked around, up and down, and every once in a while I would have one of those nervous spells, draw and jerk, and I would be out of my head. When I would get in that condition my wife would send for the doctor. I have had those spells ever since the accident happened, but not regular. Sometimes I will have more than others.' Now, if I do any straining work, it brings on one of those spells. I can not lift anything to amount to anything. If I walk a great deal it breaks me down, and finally I am in bed. I have right here recently had a spell which I could attribute to lifting. I believe it was in June or July I had a pretty bad spell by lifting something around home. I think I went to the well and drew a bucket of water. I have not been able to do any regular manual work since I was hurt. I am unable to do the work of a fireman to-day. Before the accident my health was good, and I had not had any spells of the kind I have described." The time at which the plaintiff was testifying was about seven years after the injury. Dr. Sims, the family physician, testified: "When I reached him I found him in a state of partial convulsions, muscles very much drawn, unconscious; seemed to be considerable muscular contraction. Dr. DesPortes, the railway surgeon, came in about the same time. I made a physical examination of the body at that time. I don't remember how long he was confined to his bed, but a good long while, months. I mean by that confined to his bed, that is where he could be taken up or down. As a result of examinations made immediately after the injury and my presence with him at that time, in my opinion, the morning I saw him, he had had an injury

to the spine in the region of the lower end of the lumbar spine, traumatic injury to the spine, the effect of the injury being to paralyze the lower extremities and produce a state of nervous irritation, which threw him into that unconscious state, aggravated form of convulsions. . . The plaintiff also had inflammation of the bladder from paralysis. The plaintiff suffered very much from his bladder being unable to pass his urine. The retention of the urine was very painful. I only visited the plaintiff for the first few days, and then after that I turned him over to the railroad surgeon, and he attended him a month or so himself, possibly two or three months. . . I don't think he will ever be physically any account." Where pain and suffering were involved on account of injuries such as were described by the witnesses, we can not say as a matter of law that when considered in connection with the age and earning capacity of the plaintiff, and his prospect for an increase of earning capacity, the verdict was so excessive as to authorize an interference with the discretion of the trial court, who approved and refused to set aside the verdict.

11. When the case was before this court on a former occasion (120 *Ga.* 593) a new trial was granted. The evidence then before the court was of such character as to show the injury, and that the plaintiff was free from fault, which raised the statutory presumption provided for in Civil Code, §2321, against the defendant. To meet the presumption the defendant introduced its employees, whose testimony was in no wise contradicted; and it was held by this court that the testimony so introduced was sufficient to overcome the statutory presumption against the defendant, and thereupon a new trial was granted. Upon the next trial a witness was introduced by the plaintiff, whose testimony is set out at greater length in the statement of facts, for the purpose of contradicting and rebutting the testimony by witnesses for the defendant. This witness was not introduced on the former trial. The effect of the testimony of this witness was such as to contradict the testimony of the witnesses for the defendant upon the point as to whether or not the alleged defective bolt was in fact defective, and as to whether or not the defendant had exercised ordinary care in its inspection of the engine. In view of the contentions of the parties, the case is made to turn upon these points. It was contended by the defendant that the physical fact

and testimony of other witnesses for the defense completely discredited the testimony of this witness, and destroyed its effect, thereby leaving the case before the jury substantially upon the same evidence as was offered upon the former trial, and that, on account of the adjudication by this court in the former case, a verdict for the defendant was demanded. The physical facts alone were not sufficient to destroy the testimony of the witness; and it is well settled that wherever there is a conflict between witnesses, it must be left to the jury of the vicinage to reconcile the conflict. In such cases this court never interferes with the discretion of the trial court in refusing to set aside the verdict of the jury. *Judgment affirmed. All the Justices concur.*